# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1444

_____

Mary Wilson,                                  *
                                              *
        Appellant,                            *
                                              *    Appeal from the United States
    v.                                        *    District Court for the Southern
                                              *    District of Iowa.
City of Des Moines,                           *
                                              *
        Appellee.                             *

_____

Submitted:  November 14, 2005
Filed:  March 22, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Mary Wilson sued the City of Des Moines, raising claims of sexual discrimination, sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and the Iowa Civil Rights Act. Wilson appeals from the district court's denial of her motion for new trial following a jury verdict in favor of the City. We affirm.

## I.    BACKGROUND

Because the jury ruled in the City's favor on each of Wilson's claims, we provide the following recitation of facts in the light most favorable to the jury verdict and give all reasonable inferences to the City, although we include certain facts urged by Wilson on appeal in order to elucidate the arguments she presents. Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1084 (8th Cir. 2006).

Wilson began working for the City of Des Moines in 1995 and moved to its Public Works Department in 1998. The Public Works director at the time was William Stowe. In the Public Works department, Wilson started with the street and sidewalk divisions and transferred to the sewer division in June 2002. Roger Jaschke supervised Wilson in the sidewalk division and Keith McLey led Wilson's crew. Wilson trained with Thomas Carrington in the sewer division. The City terminated Wilson in June 2003.

The testimony of her supervisors revealed that Wilson was an employee who had a pattern of lodging complaints only when her own work performance would come under scrutiny. The City further established that Wilson was an employee who did not take responsibility for her own misconduct, instead blaming others and coming up with excuses. Further evidence detailed Wilson's own engagement in sexually explicit language and behavior in the workplace. She talked about vibrators and men's sex organs, among other comments and actions. Indeed, Wilson's workplace behavioral problems extended to sleeping on the job, which the City alleged demonstrated her motive for lying about sexual harassment. Finally, the City showed that Carrington (Wilson's coworker in the sewer division) had motives to testify falsely on Wilson's behalf including, among other things, his own previous discipline and ultimate discharge from City employment.

Wilson complained of Jaschke's sexual discrimination in January 2001 based on the difference in treatment she received in work assignments and in the way he treated Wilson. The City investigated the complaint. That investigation revealed some personal differences between Jaschke and Wilson (e.g., he disliked Wilson because Wilson perpetuated a rumor about Jaschke) and Jaschke was disciplined for some unequal work assignments. Wilson was likewise disciplined for spreading the rumor. Stowe then sent Wilson and Jaschke to a private mediator to work out their differences. The mediation occurred in February 2001 and facilitated a way for the two to work together.

Wilson also alleged that she was sexually harassed by McLey, her crew chief on the sidewalk crew. Wilson testified that McLey's offensive behavior began within the first week of working with him, in the spring of 2000. The City noted at trial that the first time it knew of Wilson's complaint against McLey was October 2001, when Wilson formally complained to management. Wilson's coworker Craig Wadsworth testified that he complained to Jaschke about McLey's treatment of Wilson in October 2000. The City, however, challenged Wadsworth's credibility on cross-examination on many grounds and noted that he had been fired by the City for violations of its drug policy. Director Stowe testified that the first time he became aware of any allegations against McLey was when Wilson herself complained. Once the City learned of Wilson's complaint, it separated Wilson and McLey into different crews and the two never worked together again. The City concluded that McLey had indeed acted inappropriately and issued a leave of absence of one day for McLey.

Stowe testified that the City ultimately fired Wilson for misconduct by being several miles off her work route, for damaging a City vehicle and then engaging in a cover-up, in addition to being absent without leave.

On appeal, Wilson cites a very different set of facts, reflecting the version of the story she presented to the jury. She claims that she was viewed as a productive

employee but was exposed to sexual harassment and discrimination in a male-dominated workplace. Wilson claims she presented witnesses to substantiate each of her claims of discrimination, harassment and retaliation. Wilson further alleges that the disciplinary actions taken against her were, in fact, retaliation for her charges of discrimination and that the City took no action against others involved. She claims that McLey subjected her to repeated, vulgar workplace discussions that were sexually offensive and that he touched her inappropriately on a number of occasions. Wilson argued that the City was determined to terminate her, watching her for any problems, and that they ultimately did terminate her as planned.

The jury, as indicated, ruled in favor of the City and against Wilson. Wilson then filed a motion for new trial, which the district court denied. On appeal, Wilson challenges the district court's refusal, on hearsay grounds, to admit certain testimony of Carrington, who would have testified that he was aware that others in the sidewalk division referred to Wilson as a "bitch, cunt and slut." Wilson also challenges McLey's allegations about her sexual language and behavior under Federal Rule of Evidence 412. Wilson additionally challenges the admission of Roxanne Sikes's testimony under Rule 412. Sikes was a coworker of Wilson's who testified that Wilson spoke in a lewd, rude and unlady-like fashion. Finally, Wilson alleges that two jury instructions were inaccurate statements of federal and state law and that they misled the jury.

## II.    DISCUSSION

We review a district court's denial of a motion for new trial with great deference, reversing only if the district court clearly abused its discretion. Zutz v. Case Corp., 422 F.3d 764, 772 (8th Cir. 2005). "'When a motion for new trial is based on rulings regarding the admissibility of evidence, the district court will not be reversed absent a clear and prejudicial abuse of discretion.'" Warren v. Prejean, 301 F.3d 893, 904 (8th Cir. 2002) (quoting Mattis v. Carlon Elec. Prods., 295 F.3d 856,

863 (8th Cir. 2002) (citation omitted)).  "Only when the evidence excluded is of such a critical nature that there is 'no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted' has a district court so abused its discretion."  Stephens v. Rheem Mfg. Co., 220 F.3d 882, 885 (8th Cir. 2000) (quoting Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987)).

### A.   Carrington's Testimony

At trial, Wilson offered Carrington's testimony that Wilson's coworkers commonly referred to her as a "bitch," a "cunt," and a "slut."  Wilson claims that these words are direct evidence of sexual harassment and retaliation and should have been admitted.

At trial, the district court sustained the City's hearsay objection and refused to admit the evidence.  In its order on Wilson's motion for new trial, the district court conceded that its trial ruling on this issue may have been incorrect but that this error did not substantiate the need for a new trial.  In doing so, the district court noted the serious issues of reliability and relevancy of Carrington's testimony because Carrington could only vaguely recall one of several persons whom he said made these statements and he did not adequately explain the context in which the statements were made.  Moreover, the district court concluded that even if the testimony was accurate there was no basis to reasonably characterize the statements as retaliatory or as indicators of general workplace hostility related to any supervisory personnel.

In response, Wilson alleges that the statements were obviously not offered to prove the truth of the matter asserted, but rather to demonstrate the systematic discrimination faced by Wilson, as well as the general hostility fostered by the City towards women in general and Wilson in particular.  She argues that even if the statements were hearsay, they were admissible to show the declarant's state of mind.

-5-

Because we agree with Wilson and the district court that these statements were not hearsay we need not address the latter argument.[1]

This determination does not carry the day for Wilson, however. The erroneous ruling was not prejudicial to her. Thus, we find no abuse of discretion by the district court regarding Carrington's testimony.

Wilson nonetheless persists with the argument that the exclusion of this evidence was, indeed, highly prejudicial, claiming it severed the link between Wilson's sex and the retaliation she experienced from her coworkers after her complaint of sexual harassment against McLey. She claims its rejection limited her ability to prove the severity and pervasiveness of the harassment. We do not share Wilson's conviction. The words spoken by Wilson's coworkers do not add as much as Wilson claims. And, our analysis of this issue is complicated by the fact that Wilson has not consistently argued what it is that Carrington's testimony would have represented for her case. At trial, in her briefs to the district court on her motion for new trial, and in her briefs on appeal, Wilson concentrated on her argument that this proposed testimony provided evidence of the pervasively sexist culture she faced. She argued that the testimony was probative of workplace hostility and that Wilson's coworkers acted in a discriminatory and harassing manner toward her because of her gender.

At oral argument, however, Wilson argued for the first time that Carrington would have testified that some male coworkers in the sidewalk division told

---

[1]Even the City acknowledges that Wilson did not offer these words to prove the truth of the literal words, but argues that they are still hearsay because they were offered to prove the implied assertion that these words were spoken with the intent of sexually harassing Wilson, citing United States v. Reynolds, 715 F.2d 99, 104 (3d Cir. 1983). This circuit has not expressly adopted the theory of implied assertion as argued by the City and we see no need to do so today.

-6-

Carrington that Stowe also used the same pejorative words to describe Wilson and warned the men in that division about Wilson. Wilson's contention concerning these statements by a City official somewhat alters the hearsay landscape. Carrington's recitation of these second- and third-hand statements, apparently to prove that Stowe, a City manager, uttered them to other City workers would likely have been inadmissible hearsay. In any event, we refuse to consider this new argument. See Dobrovolny v. Moore, 126 F.3d 1111, 1114 n.2 (8th Cir. 1997) (noting that absent exceptional circumstances, this court refuses to consider issues that are raised for the first time on appeal). At the bottom line, the district court's exclusion of Carrington's evidence was not a clear and prejudicial abuse of discretion.

Finally, there was evidence that neither the City nor Wilson knew of the comments until discovery was conducted in this case. Thus, the City was never given the opportunity to respond to the alleged problem. Moreover, the City established that it exercised reasonable care to prevent and correct the sexually harassing behavior that *was* noted by Wilson. As a result, Wilson did not establish that the City failed to take proper remedial action, as required in hostile work environment claims of this type.[2] Cheshewalla v. Rand & Son Constr. Co., 415 F.3d 847, 850 (8th Cir. 2005), cert. denied, 126 S. Ct. 1033 (2006). And, given our standard of review, we assume the jury resolved the relevant facts in the City's favor on this issue.

---

[2]To establish a prima facie case for a hostile work environment based on sexual harassment, Wilson must show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition or privilege of her employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Tatum v. Ark. Dep't of Health, 411 F.3d 955, 959 (8th Cir. 2005).

## B.     Rule 412 Evidence – Admission and Notice Provisions

Wilson also challenges the fact that the district court failed to hold a hearing as required by Federal Rule of Evidence 412 concerning the testimony about Wilson's alleged sexual behavior or sexually charged comments in the workplace and that the district court improperly admitted certain testimony of McLey and Sikes.  Again, we will not reverse the district court absent a clear and prejudicial abuse of discretion. Warren, 301 F.3d at 904.

Rule 412 excludes, in civil or criminal proceedings involving alleged sexual misconduct, any evidence about a victim's sexual behavior unless certain conditions are met.  Fed. R. Evid. 412(a).  Among other things, the rule contains procedural requirements–that the party intending to offer such evidence must file a motion specifically describing the evidence and its purpose fourteen days before trial. Fed. R. Evid. 412(c)(1)(A).  Then, the court must hold an *in camera* hearing that allows "the victim and parties" the right to be heard.  Fed. R. Evid. 412(c)(2).  There was no motion or hearing here.  In a civil case, though, Rule 412 allows the admission of evidence "if it is otherwise admissible under [the Federal Rules of Evidence] and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."  Fed. R. Evid. 412(b)(2).

In past cases we have refrained from expressly determining whether Rule 412 applies to sexual harassment lawsuits.  Warren, 301 F.3d at 906; Beard v. Flying J., Inc., 266 F.3d 792, 801 (8th Cir. 2001).  However, advisory committee notes clearly contemplate that "Rule 412 will . . . apply in a Title VII action in which the plaintiff has alleged sexual harassment." Fed. R. Evid. 412 advisory committee's notes.  Here, the testimony at issue addressed "other sexual behavior" as contemplated by Rule 412(a)(1).  But see Warren, 301 F.3d at 906 (allowing the female complainant employee to testify about a male coworker's sexual history and preferences in order

to refute the employer's allegation that she had sexually harassed him since the evidence dealt only with the relationship between the two employees and no "other" sexual behavior). Even so, we believe that the evidence was properly admitted as an exception under Rule 412(b)(2), and the court struck an acceptable balance between the danger of undue prejudice and the need to present the jury with relevant evidence.

At trial, the City offered evidence, by way of McLey's testimony, of sexually charged comments made by Wilson in the workplace. Sikes also testified over Wilson's rule 412 and 403 objections that Wilson used lewd, rude and unlady-like language, which evidence was offered by the City to demonstrate, among other things, why Wilson's coworkers did not socialize with her. The district court also admitted the evidence to establish that Wilson might have welcomed the alleged harassment, determining first that this was not Rule 412 testimony and that even if it was, the testimony was properly admitted because Wilson's behavior in the workplace was relevant to the issue of whether the sexual harassment was invited.

Wilson claims that this eviscerated the policies behind Rule 412 and only disparaged Wilson in an effort to focus the jury's attention on issues other than the evidence of sexual harassment. While we agree that the district court erred in mischaracterizing this evidence as non-Rule 412 evidence in the first instance, there was no danger of harm or prejudice to Wilson or any other party, and the district court correctly determined that it was admissible as relevant to the issues raised by Wilson's claims.

We recognize that an alleged victim's private sexual behavior does not change her expectations about her work environment. Wolak v. Spucci, 217 F.3d 157, 160 (2d Cir. 2000). Even so, evidence of an alleged victim's particular behavior in the workplace may be probative of welcomeness. Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 856 (1st Cir. 1998). In that light, the district court carefully

limited the testimony at issue to Wilson's workplace behavior and comments made while she worked with McLey and Sikes.  As limited, it was highly probative of the question of whether the alleged harassment was unwelcome.  Beard, 266 F.3d 801.  "The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome."  Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986) (quotation omitted).

Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details."  Fed. R. Evid. 412 advisory committee's note.  The evidence of Wilson's sexual comments and behavior in the workplace does not raise such concerns.  Wilson had no intention to hide this behavior from others, for the comments and behavior at issue were conducted in public.  Beard, 266 F.3d at 802.  Its probative value substantially outweighed any unfair prejudice that it might have produced.

Finally, the failure to follow the procedural requirements under Rule 412 was harmless in light of Wilson's knowledge that McLey would testify and her own submission of exhibit sixteen that contained facts substantially similar to the testimony adduced at trial.  In light of the latter evidence, McLey's testimony was cumulative. Wilson was not, as she claimed at trial outside of the presence of the jury, in any way "blindsided" by the admission of this testimony.  Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error.  Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 132 (8th Cir. 1985).  Therefore the district court did not commit a clear and prejudicial abuse of discretion in admitting this testimony.

## C.    Jury Instructions 16 and 19

The district court's rulings concerning jury instructions are reviewed for abuse of discretion.  Smith v. Chase Group, Inc., 354 F.3d 801, 808 (8th Cir. 2004).  "When an instructional error has been properly preserved for appeal . . . we must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Morse v. S. Union Co., 174 F.3d 917, 926 (8th Cir. 1999) (quotations omitted).  "The trial court is required to properly instruct the jury on a party's theory of the case but errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party."  Smith, 354 F.3d at 808.

Here, Wilson argues that jury instructions sixteen and nineteen were inaccurate statements of law.  Instruction sixteen explained how a plaintiff proves whether an employer "knows" of the sexual harassment:  "An employer knows of the sexual harassment when an employee complains to the appropriate level of management of the conduct, or when the employer should have known, in the exercise of reasonable care, of the sexual harassment."  Wilson claims that this inaccurately conveyed to the jury that the employee who is the target of the harassment must have been the one to complain in order for the employer to be deemed to have "known" of the harassment. Instruction sixteen does not say this, however, and correctly instructs the jury that either *an* employee (not necessarily the plaintiff) can complain, or the employer can be deemed to know under alternative circumstances, which would include complaints made by coworkers.  There was no prejudice here. This instruction, read in conjunction with the entire set of instructions, adequately explains the applicable law to the jury.  We find no error in instruction sixteen and the district court did not abuse its discretion in including instruction sixteen as presented.

-11-

Instruction nineteen, also challenged by Wilson, stated that being shunned or ostracized by coworkers is not an adverse employment action. Wilson acknowledges that this statement accurately reflects federal law under Title VII but argues that it does not accurately reflect Iowa law. Wilson's citation to Iowa law is misguided, however. Channon v. UPS, Inc., 629 N.W.2d 835, 865 (Iowa 2001) does not, as Wilson claims, stand for the proposition that ostracism by coworkers constitutes an adverse employment action under the Iowa Civil Rights Act. Rather, in support of her retaliation claim in Channon, the employee established that adverse employment actions occurred at the hands of her superiors in the form of ridicule, constructive demotion, and lack of support in the face of open hostility about her lawsuit after the employee complained to her superiors about a coworker's boorish behavior. Id. It was the response of her superiors in reaction to such ostracism, not the ostracism by the plaintiff's fellow employees itself, that formed the basis of the adverse employment actions. Accordingly, instruction nineteen accurately reflected Iowa law.

## III.   CONCLUSION

For the reasons stated herein we affirm the district court's denial of Wilson's motion for new trial.

_____