# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2032

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| LaMont William Papakee, | * | |
| | * | |
| Appellant. | * | |

_____

No. 08-2037

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Connie Frances Blackcloud, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 10, 2008
Filed: July 17, 2009

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

LaMont William Papakee and Connie Frances Blackcloud were convicted by a jury of committing sexual abuse against a Native American woman, L.D., in Indian country. The district court[1] sentenced Papakee and Blackcloud to 360 months' and 262 months' imprisonment, respectively. Both defendants appeal, challenging an evidentiary ruling made at trial, the sufficiency of the evidence supporting their convictions, and their sentences. We affirm.

I.

L.D. is a member of the Omaha Tribe of Nebraska. In August 2006, L.D. left her tribe in Nebraska and moved to the Sac and Fox Tribe of the Mississippi in the Meskwaki Settlement in Tama County, Iowa. There, she began living with Papakee and Blackcloud in Papakee's house. Every day, the three drank heavily, to the point of intoxication.

According to the prosecution's evidence, in early September 2006, on a day the three had spent drinking beer and vodka, Papakee and Blackcloud sexually abused L.D. inside Papakee's house. L.D. testified that Papakee and Blackcloud held her down on a bed and forced a cucumber into her vagina. Following the incident, L.D. left Papakee's house and began staying at the home of one of Papakee's relatives. The assault was reported to the Tama County Sheriff's Office later that week.

A grand jury returned an indictment against Papakee and Blackcloud based on this incident. Count 1 of the superseding indictment charged each defendant with

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

knowingly causing, and attempting to cause, another person to engage in a sexual act by using force against that person, in violation of 18 U.S.C. §§ 2, 1151, 1153, and 2241(a)(1). Count 2 charged each defendant with knowingly engaging in, and attempting to engage in, a sexual act with another person who was incapable of appraising the nature of the conduct and physically incapable of declining participation in, and communicating unwillingness to engage in, that sexual act, in violation of 18 U.S.C. §§ 2, 1151, 1153, and 2242(2). Following a four-day jury trial, Papakee and Blackcloud were convicted of sexual abuse as charged in Count 2, but acquitted of aggravated sexual abuse as charged in Count 1.

At sentencing, the district court determined that Blackcloud's base offense level was 30 under USSG § 2A3.1(a)(2). It then applied a four-level specific offense characteristic for aggravated sexual abuse under § 2A3.1(b)(1), even though the jury had acquitted Blackcloud on Count 1. Based on an offense level of 34 and a criminal history category IV, the court sentenced Blackcloud to 262 months' imprisonment, the top of the advisory guideline range.

As to Papakee, the district court also started with a base offense level of 30 and applied a four-level specific offense characteristic for aggravated sexual abuse. The court then determined that Papakee was a career offender under § 4B1.1. Application of the career-offender guideline raised Papakee's offense level from 34 to 37 and his criminal history category from IV to VI. After concluding that Papakee's advisory guideline range was 360 months' to life imprisonment, the court sentenced him to 360 months. The court stated, moreover, that it would have imposed the same sentence even if Papakee was not a career offender. Without the career-offender enhancement, Papakee's advisory guideline range was 210 to 262 months' imprisonment, but the court stated that it would have imposed a sentence of 360 months based on 18 U.S.C. § 3553(a).

-3-

II.

Papakee contends that the district court abused its discretion at trial by excluding evidence designed to attack L.D.'s credibility. Papakee sought to introduce testimony from Wesley Sebetka, a deputy in the Tama County Sheriff's Office, that while he was interviewing L.D. about the sexual abuse, L.D. told him that he was "cute" and asked him if he wanted to "crawl into bed" with her. The district court ruled that the proffered testimony was inadmissible under Federal Rule of Evidence 412 and, alternatively, under Rule 403.

Rule 412 provides that, "in any civil or criminal proceeding involving alleged sexual misconduct," evidence offered "to prove that any alleged victim engaged in other sexual behavior," or "to prove any alleged victim's sexual predisposition," is not admissible, unless certain enumerated exceptions apply. Fed. R. Evid. 412. According to Papakee, Rule 412 does not bar evidence of L.D.'s statements to Sebetka, because her statement that the deputy was "cute" and her proposal that he "crawl into bed" with her do not qualify as "sexual behavior" or evidence of her "sexual predisposition."

We conclude that the district court properly excluded the disputed testimony under Rule 412. The testimony tended to show that L.D. propositioned Sebetka for sex within a short time after the alleged assault by Papakee and Blackcloud. We agree with the district court that a sexual proposition is "other sexual behavior" within the meaning of Rule 412(a)(1). The ordinary meaning of "behavior" extends to the manner in which a person conducts herself, *Webster's Third New International Dictionary* 199 (2002), and when a person undertakes conduct aimed at engaging in sexual activity, that conduct is naturally understood to be "sexual behavior." There is no reason to believe that the rule is limited to sexual intercourse or sexual contact. To the contrary, the advisory committee's notes explain that the word "behavior" should be construed to include "activities of the mind," such as fantasies or dreams.

-4-

Fed. R. Evid. 412 advisory committee's notes; *see also Wilson v. City of Des Moines*, 442 F.3d 637, 639-40, 643-44 (8th Cir. 2006) (concluding that female employee's statements about vibrators and male sex organs constituted "sexual comments and behavior" that was governed by Rule 412). If a person's unexpressed desire to engage in sexual activity is inadmissible, then surely her expression of that desire to another person also comes within the scope of the rule.

Papakee maintains that even if L.D.'s statements qualify as "sexual behavior," then the disputed testimony should have been admitted under Rule 412's exception for "evidence the exclusion of which would violate the constitutional rights of the defendant." Fed. R. Evid. 412(b)(1)(C). According to Papakee, the court's exclusion of the testimony violated his rights under the Confrontation Clause. We disagree. A restriction on an accused's right to introduce evidence may not be arbitrary or disproportionate to the purpose that the restriction is designed to serve, *Michigan v. Lucas*, 500 U.S. 145, 151 (1991), but that principle was not violated here. Rule 412 serves important purposes of preventing harassment or embarrassment of sexual abuse victims, and the proffered evidence was of little or no probative value. *See United States v. Bordeaux*, 400 F.3d 548, 558-59 (8th Cir. 2005). Papakee contends that L.D. met with Sebetka shortly after leaving Papakee's residence, and that her intoxicated state was relevant to her ability to perceive and recall the events of that evening. But the district court did permit testimony that L.D. was intoxicated when she met with Sebetka. (T. Tr. II, at 409, 414-15). The court excluded only evidence of the sexual proposition, which had little, if any, relevance to the question whether L.D. was sexually abused by Papakee and Blackcloud. There was no error.

### III.

Papakee and Blackcloud both challenge the sufficiency of the evidence to support their convictions. Each defendant was convicted of sexual abuse as charged in Count 2, in violation of 18 U.S.C. §§ 2, 1151, 1153, and 2242(2). Sections 1151,

1153, and 2242(2) make it unlawful for an Indian in Indian country knowingly to engage, or attempt to engage, in a "sexual act" with another person who is "incapable of appraising the nature of the conduct," or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242(2). The term "sexual act" refers, among other things, to "the penetration, however slight, of the . . . genital opening of another . . . by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(2)(C). Section 2 makes it unlawful for any person to aid or abet the commission of a federal offense, including the offense of sexual abuse.

The jury was properly instructed that it could convict each defendant on Count 2 under any one of four theories: (1) that the defendant engaged in sexual abuse; (2) that the defendant attempted to engage in sexual abuse; (3) that the defendant aided and abetted the commission of sexual abuse; or (4) that the defendant aided and abetted the commission of attempted sexual abuse. Because the jury returned a general verdict of guilty in the case of each defendant, we do not know which theory or theories the jury found that the government proved beyond a reasonable doubt. We will therefore uphold the jury's verdicts if the evidence is sufficient to support the defendants' convictions under any one of the alternative theories. *Turner v. United States*, 396 U.S. 398, 420 (1970). The evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Papakee and Blackcloud dispute that they knowingly engaged, or attempted to engage, in a sexual act with L.D. We believe the evidence is sufficient to support the jury's conclusion that they did. At trial, L.D. testified that she was sexually abused by Papakee and Blackcloud while staying in Papakee's house in early September 2006. Although L.D. could not remember the precise date of the alleged abuse, she

recalled being intoxicated from drinking beer and vodka on the day the abuse occurred. She also recalled falling asleep in Papakee's bedroom around 10:30 p.m. that night.

L.D. testified that she awoke an hour later to find herself lying on the bed on her back, with Papakee pressing his knees on her shoulders and head-butting her on the nose, and Blackcloud pulling apart her legs and tearing open her pants. L.D. recalled that Blackcloud had a cigarette, which she used to burn L.D.'s buttocks and thigh, as well as a cucumber. According to L.D., Blackcloud "tried to put" the cucumber in L.D.'s vagina, while Papakee "held it by one hand and tried to help her put it inside." L.D. testified that she felt the cucumber in her vagina, and that she heard Blackcloud say, "Shut up and take it like a man." L.D. further testified that Blackcloud struck her on the head with a vodka bottle, and that the abuse ended only when Papakee's cousin, Sheila, came into the bedroom. By that time, L.D. stated, she was bleeding from her head, nose, and lip. L.D. recalled that Sheila helped gather her belongings and then took her to the home of Rodney Papakee, Sheila's father.

Important elements of L.D.'s testimony were corroborated by the testimony of others. Sheila testified that she was in Papakee's house on three separate occasions on the alleged day of the abuse. She stated that when she first entered the house around 1 p.m., she found Blackcloud "roaming around," L.D. passed out on a couch in the living room, and Papakee sitting next to L.D. According to Sheila, Papakee asked her, "Do you want to check this out?," and lifted a blanket covering L.D.'s waist to reveal a cucumber in L.D.'s vagina. Sheila testified that she left the house, but returned an hour later to find L.D., awake and fully clothed, listening to music and watching TV in the living room. Sheila stated that she left the house again, but decided to call back to check on L.D. When she heard L.D. crying on the other end of the line, Sheila decided to make another trip to the house. She testified that when she entered the house around 3 p.m., Blackcloud was coming out of Papakee's bedroom. Sheila went into the bedroom, where she found L.D. lying on the bed.

Papakee's sister, Alicia, was applying pressure to a wound on L.D.'s forehead and wiping blood from L.D.'s face, while Papakee stood by, watching. Sheila testified that Blackcloud admitted to hitting L.D. on the forehead with a Bic lighter, and that, after the bleeding from L.D.'s forehead stopped, Sheila escorted L.D. out of Papakee's house and brought her to Rodney's house.

Another of Papakee's cousins, Rita, testified that she confronted Papakee and Blackcloud upon learning about the alleged sexual abuse. Although Rita admitted that she was drunk when she confronted them, she recalled speaking to both defendants individually. According to her testimony, she asked Papakee, "How would you feel if somebody did that to your daughter?," and Papakee responded, without denying abuse, by saying, "You don't even know this woman. What does it matter?" Rita testified that when she confronted Blackcloud about abusing L.D. with a cucumber, Blackcloud admitted, "Yeah, I did use a cucumber on her." Rita recalled responding by punching Blackcloud in the face.

We conclude that a rational jury, viewing this evidence in the light most favorable to the prosecution, could have found each defendant guilty of sexual abuse. L.D.'s testimony about the incident in the bedroom, together with Sheila's description of what happened that day and Rita's account of how the defendants reacted when confronted, provided sufficient grounds to establish that Papakee and Blackcloud knowingly placed a cucumber in L.D.'s vagina while L.D. was incapacitated. To be sure, L.D. and Rita were intoxicated during the events about which they testified, and inconsistencies existed between the testimony of L.D. and others. Whereas, for example, L.D. testified that the abuse occurred at night and ended when Sheila entered the bedroom, Sheila's testimony suggested that the abuse took place in the afternoon and concluded before she arrived. But the credibility of a witness is for the jury to decide, and any questions regarding the credibility of L.D. or others must be resolved in favor of the jury's verdict. *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir.

1996).  The evidence was sufficient to support the conviction of each defendant on Count 2 as charged in the indictment.[2]

IV.

A.

Both Papakee and Blackcloud contend that the district court committed procedural error in calculating their advisory guideline sentences.  The district court adjusted each defendant's offense level under USSG § 2A3.1(b)(1), which requires a four-level increase "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)."  Although the jury acquitted each defendant of aggravated sexual abuse in violation of § 2241(a), the district court determined that the offense of which the jury convicted each defendant – sexual abuse in violation of 18 U.S.C. § 2242(2) – involved conduct described in § 2241(a).  Accordingly, the district court applied a four-level specific offense characteristic under § 2A3.1(b)(1) to each defendant's sentence.

Blackcloud contends that the district court's consideration of acquitted conduct to enhance her sentence violated her rights under the Fifth and Sixth Amendments. It is settled in this circuit, however, that the Constitution does not preclude a district

---

[2]At oral argument, Papakee contended that the government's theory at trial was that the aggravated sexual abuse charged in Count 1 occurred in Papakee's bedroom, and that the sexual abuse charged in Count 2 occurred in Papakee's living room. According to Papakee, therefore, the conviction cannot be sustained unless the evidence is sufficient to show that Papakee and Blackcloud committed sexual abuse in Papakee's living room.  Neither the indictment nor the jury instructions, however, charged that Count 2 occurred in a particular location in Papakee's house.  The jury was permitted to return a verdict on Count 2 based on any factually adequate theory, regardless of the government's interpretation of the facts at trial.  *See Santellan v. Cockrell*, 271 F.3d 190, 193-97 (5th Cir. 2001).

court from considering acquitted conduct in sentencing a criminal defendant. *United States v. Canania*, 532 F.3d 764, 771 (8th Cir. 2008).

Papakee argues that the district court clearly erred in finding that his offense of conviction involved conduct described in § 2241(a). Section 2241(a)(1) makes it unlawful for a person knowingly to cause another person to engage in a sexual act "by using force against that other person." 18 U.S.C. § 2241(a)(1). L.D.'s testimony at trial was that Papakee caused her to engage in a sexual act by using a cucumber to penetrate her vagina. She further testified that Papakee used force in abusing her sexually, both by holding her against the bed, with his knees on her shoulders, and by head-butting her on the nose. In light of this testimony, we conclude that the district court did not clearly err in finding that Papakee's offense of conviction involved conduct described in § 2241(a), and that a four-level enhancement of his sentence under § 2A3.1(b)(1) was appropriate.

B.

Papakee also contends that the district court erred in sentencing him as a career offender under USSG § 4B1.1. One prerequisite to qualification as a career offender is that the defendant's offense of conviction be "a felony that is either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). Papakee argues that sexual abuse in violation of § 2242(2) is not a "crime of violence," because it neither "has as an element the use, attempted use, or threatened use of physical force against the person of another," nor "involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a). He observes that the Sentencing Commission defined "crime of violence" to include "forcible sex offenses," *id.* § 4B1.2, comment. (n.1), and maintains that non-forcible sex offenses are excluded by implication. He contends that because § 2242(2) encompasses non-forcible sexual assaults, a conviction under that statute does not qualify as a "crime of violence"

-10-

under the categorical analysis of § 4B1.2. The district court rejected Papakee's contention, relying on *United States v. Riley*, 183 F.3d 1155 (9th Cir. 1999).

We need not decide whether a violation of § 2242(2) is a "crime of violence," because we find no basis to reverse the district court's alternative determination that Papakee should be sentenced to 360 months' imprisonment under 18 U.S.C. § 3553(a) even if he was not a career offender under the guidelines. The court determined that without the career-offender enhancement, Papakee's advisory guideline range would have been 210 to 262 months' imprisonment, based on an offense level of 34 and criminal history category IV. The court then explained that based on the factors set forth in § 3553(a), particularly the circumstances of the offense and the criminal history of the defendant, it would have varied upward to impose a sentence of 360 months' imprisonment. Thus, even assuming Papakee was not a career offender, any error in that determination was harmless, because the court would have imposed the same sentence by varying upward from an alternative, correctly calculated guideline range. *See United States v. Johnston*, 533 F.3d 972, 978 (8th Cir. 2008).

Papakee does not challenge the adequacy of the district court's explanation of its alternative sentence, but argues that the sentence is substantively unreasonable. We review the substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007). Where, as here, the sentence is outside the advisory guideline range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 597.

In considering the § 3553(a) factors, the district court gave several reasons for imposing a sentence of 360 months' imprisonment. First, the court noted that the facts and circumstances of Papakee's offense of conviction were "particularly aggravating," given Papakee's use of a cucumber and L.D.'s vulnerability while intoxicated. Second, the court believed that Papakee's criminal history showed that he "is

dangerous and is at a high risk to re-offend – likely by causing physical harm to others." The court cited Papakee's prior state convictions for assault causing injury, assault with intent to commit sexual abuse, and aggravated assault. Third, the court noted that Papakee had several convictions for serious offenses that were not taken into account by the advisory guidelines because they occurred outside the applicable time period. Two of these convictions were for driving while intoxicated, an "extremely dangerous crime." *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008).

Giving deference to the district court as required by *Gall*, we conclude that Papakee's sentence is not unreasonable in light of § 3553(a). The aggravated nature of his offense, coupled with the seriousness of his criminal history, provide adequate justification for the district court's exercise of its abundant discretion.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, concurring.

I join the majority's ultimate conclusion in these appeals, but write separately to voice my opposition to the use of acquitted conduct in determining Blackcloud's sentence.

I concur, rather than dissent, because I am bound by prior decisions of this circuit that expressly permit a district court to use acquitted conduct at sentencing. *See, e.g.*, *United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007) ("Acquitted conduct may be used for sentencing purposes if proved by a preponderance of the

evidence."). But I am aware of no post-*Booker* authority from the Supreme Court that authorizes the use of acquitted conduct.[3]

Not long ago, I wrote extensively that the use of acquitted conduct violates the Sixth Amendment. *See United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring) (noting the Supreme Court's affirmation of the centrality of the jury in the criminal-justice system and that "[a] judge violates a defendant's Sixth Amendment rights by making findings of fact that either ignore or countermand those made by the jury"). I also believe that use of acquitted conduct to enhance a sentence violates the Due Process Clause of the Fifth Amendment. *See id.* at 777 (Bright, J., concurring) ("[T]he consideration of 'acquitted conduct' undermines the notice requirement that is at the heart of any criminal proceeding.").

I will not repeat here my concurrence in *Canania*. But I will reiterate that "the use of 'acquitted conduct' at sentencing in federal district courts is uniquely malevolent." *Id.* (Bright, J., concurring). We must end the pernicious practice of imprisoning a defendant for crimes that a jury found he did not commit. It is now incumbent on the Supreme Court to correct this injustice.

––––––––––––––––––––––––––––––

[3]And in *United States v. Booker*, 543 U.S. 220, 240 (2005), the Supreme Court correctly characterized *United States v. Watts*, 519 U.S. 148, 157 (1997) as holding only that "the [Fifth Amendment's] Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines." But our court has interpreted *Watts's* narrow holding as applying to the use of acquitted conduct more broadly. *See, e.g.*, *United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998). It is clear to me that the myth of *Watts* has outgrown its actual holding. Stated plainly, *Watts* does not immunize the use of acquitted conduct from a challenge under the Sixth Amendment or the Due Process Clause of the Fifth Amendment.