# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1072

_____

Securities and Exchange Commission

*Plaintiff - Appellee*

v.

Capital Solutions Monthly Income Fund, LP, formerly known as Hennessey
Financial Monthly Income Fund, LP; Transactional Finance Fund Management, LLC

*Defendant*s

Todd A. Duckson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 21, 2015
Filed: March 15, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

This appeal arises from a civil law enforcement action that the Securities and Exchange Commission (SEC) brought against Todd Duckson, the Capital Solutions Monthly Income Fund, LP ("the Fund"), and related individuals and entities. A jury found Duckson liable for violating the antifraud provisions of the federal securities laws and for aiding and abetting the Fund's violations. On appeal, Duckson argues that the district court[1] abused its discretion in declining to admit certain evidence offered to support Duckson's defense and in crafting the verdict form. We affirm.

## I. *Background*

The SEC commenced this civil law enforcement action against Duckson, the Fund, and related individuals and entities, asserting a number of claims relating to alleged fraud in the offer and sale of certain investments: Count I asserted direct violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder ("Section 10(b) and Rule 10b-5"); Count II charged aiding and abetting the Fund's violations of Section 10(b) and Rule 10b-5; and Count III asserted direct violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"). At the time of trial, the defendants included the Fund; the Fund's investment manager, Transactional Finance Fund Management, LLC (TFFM); and attorney Duckson, who formed, owned, and controlled TFFM (collectively, "defendants").

### A. *Appraisals*

Prior to trial, the SEC filed a motion in limine to preclude evidence and argument regarding supposed property values. The motion related to Duckson's defense

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

that he believed that all of these properties that the Fund had acquired through the foreclosure on Hennessey Financial were so valuable that when the real estate crisis abated, he would be able to sell those properties, pay all of the investors back the principal and interest that they were owed, and he would have money left over to take for himself, or the Fund would be able to use it as collateral and everything would be fine.

At the final pretrial conference relating to the SEC's motion, the SEC explained that it did not object to Duckson telling his "story"; however, it did object to Duckson "offer[ing] evidence from other witnesses . . . about what these other witnesses thought that the value of these properties were, other people who were involved in the Fund, and what their belief was based on." The court granted the SEC's motion as follows:

> a.      Evidence of asserted property values shall be presumptively inadmissible, unless and until there is an additional offer of proof pursuant to [Federal] Rule [of Evidence] 104[2] establishing sufficient foundation for who made the appraisals, at whose direction, the timing of the appraisals, when they were received, and how they were used. If and when the Court receives an additional offer of proof and any exhibits related to that offer of proof, the Court reserves the right to revisit the issue, whether prior to opening statements or later in the trial, if necessary.
>
> b.      Absent further ruling by the Court, there shall be no reference to property values in the opening statements of either Plaintiff or Defendants.

---

[2]Rule 104(a) provides that "[t]he court must decide any preliminary question about whether a witness is qualified . . . . In so deciding, the court is not bound by evidence rules, except those on privilege."

At trial, Duckson first sought to introduce appraisals during his cross-examination of Brian Aylieff who worked as a due-diligence analyst at National Financial Partners Securities (NFP) from 2004 to 2011 and was the broker–dealer that was the primary seller of the Fund's securities. Duckson's counsel questioned Aylieff about a July 20, 2009 letter from Duckson to the Fund's limited partners. The first paragraph of this letter stated, "We have completed our analysis of the Fund's consolidated assets and liquidity. Although appraising the value of real estate is not an exact science, we are pleased to report a 2009 consolidated appraised net asset value of approximately $78 million." Aylieff confirmed that he had the opportunity to review certain of the appraisals supporting that net value figure. Duckson's counsel then asked Aylieff if he had the "opportunity to review a two-page summary [Exhibit 1251] that listed, asset by asset, what the values were, what the debt on the property was, and what the net asset value of each of those parcels was." Aylieff confirmed that he had a chance to look at the two-page summary for identification and recalled seeing that document at some point in 2009. When Duckson's counsel asked Aylieff if the document supported the $78 million net figure from the July 20 letter, the SEC objected and requested a sidebar. The SEC argued that Aylieff could not "provide the foundation for these appraisals" because he "didn't draft the appraisals [and] has no independent knowledge of how they were conducted since he's from NFP and the appraisals were presumably conducted by representatives of the Fund, or at least at their direction by outside appraisers." The court sustained the SEC's objection "primarily on [Federal Rule of Evidence] 403[3] foundation grounds . . . because . . . [the testimony] should come from Mr. Duckson, himself."

Duckson next attempted to offer the appraisals through Dean Engstrom who previously worked for the Fund and was the one who ordered the appraisals.

---

[3]Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Engstrom testified that, to his knowledge, the appraisals were conducted competently and "each appraised value that was ultimately determined represented a professional third party's best and reasoned judgment as to the actual value of the real estate as of the date of the appraisal." When Duckson's counsel then directed Engstrom to "take a look at some of the appraisals," the SEC objected. The SEC moved to exclude the appraisals because Engstrom did not prepare them and was unable to "say anything about how they went about being prepared." According to the SEC, Engstrom "simply received the appraisal, didn't know what went into them, [or] how they were done," which meant that "those appraisals are nothing more than hearsay, and [Engstrom] doesn't have the foundation to talk about them." In response, Duckson's counsel argued that the appraisals "are classic business records," which do not have to be created by the business; instead, Duckson had to show only that they were maintained and that the third party relied on those documents.

The court sustained the objection based on lack of foundation; the court explained that it needed "more information on how [the appraisals] were . . . selected and processed." The court advised Duckson's counsel that "whether they come in through Mr. Duckson or others, whether you need the appraisers, if you want more guidance from the Courts, separate from Mr. Engstrom here, I'll be glad to do that at the appropriate time. Sooner rather than later if you want."

In the proceedings that followed, the court voiced its concerns about the appraisals' length, stating that it had read "the very lengthy ones because that issue will be coming up if not during the Plaintiff's case, the Defendant's case for sure." Thereafter, when the court asked Duckson's counsel whether there was any further offer of proof that he wanted to make as to the appraisals, Duckson's counsel responded:

> As to the appraisals, I don't think so. What I'm going to do, we will have Mr. Engstrom back—I don't know if we need the jury here for this, but

what we have done is we have prepared what are basically five or six pages from the beginning of each appraisal. So it is not the whole report anymore; it is essentially just a letter. And put that in a single exhibit. That is how we intend to offer them to avoid the problems the Court has previously [raised.]

In moving these summaries into evidence, Duckson's counsel expressed his belief that the defense had "checked all of the boxes that the Court has required of us with regard to those appraisals." At no point did Duckson's counsel argue that the complete appraisals were necessary for his case, and the court received the summaries into evidence in the form that Duckson offered.

## B. *Verdict Form*

In crafting the verdict form, the district court adopted elements of both sides' proposals. The SEC had proposed a three-page general verdict form, while Duckson had requested a form that would have required the jury to find separately for "each specific SEC claim of alleged misstatement or omission"; whether the defendant made a misstatement or omission; whether the deception was material; and whether the defendant acted knowingly, recklessly, or negligently. Over Duckson's objection, the district court submitted to the jury a Special Verdict Form that separately addressed two time periods: (1) March 2008 through late October 2008 ("Period 1"), and (2) October 2008 through December 2009 ("Period 2"). Likewise, the final jury instructions advised the jury that three types of claims were at issue, which "differ[ed] by the relevant time period. Prior to October 2008[,] Mr. Duckson was the Fund's lawyer and was not the Fund's investment manager, and TFFM was not involved with the Fund." The final jury instructions provided:

- For the period *March 2008 through late October 2008 ("Time Period 1")*, the SEC alleges that: (1) the Fund violated Section 10(b) and Rule 10b-5 under the securities laws; (2) Mr. Duckson aided and abetted the Fund's violation of these laws; and (3) Mr.

Duckson and the Fund violated Section 17(a) of the securities laws.

- For the period *late October 2008 through December 2009 ("Time Period 2")*, the SEC alleges that: (1) the Fund, Mr. Duckson, and TFFM violated Section 10(b) and Rule 10b-5 under the securities laws, OR Mr. Duckson and/or TFFM aided and abetted the Fund's violation of these laws; and (2) the Fund, Mr. Duckson, and TFFM violated Section 17(a) of the securities laws.

The jury was instructed that "[t]he relevant time period w[ould] determine which documents and alleged misrepresentations or omissions are applicable for each claim." The court then explicitly carved out in the jury instructions the two time periods:

*For Time Period 1:*

> (1) the Fund's offering documents dated March 2008; and
>
> (2) update letters dated May 2008 and October 2008.

*For Time Period 2:*

> (1) the Fund's offering documents dated November 2008, February 2009, and November 2009;
>
> (2) update letters to existing investors dated February 24, 2009[,] and to brokers dated February 10, 2009; and
>
> (3) a February 2009 question and answer sheet to existing investors to offer them the Fund's new offering of "Series I Preferred Notes."

On the Special Verdict Form, with respect to Period 1, the jury found liability for the following: (1) the Fund's direct violations of Section 10(b) and Rule 10b-5,

-7-

(2) Duckson's aiding and abetting the Fund's violations of Section 10(b) and Rule 10b-5, and (3) Duckson's and the Fund's direct violations of the Securities Act.

With respect to Period 2, the jury found liability for the following: (1) Duckson's, the Fund's, and TFFM's direct violations of Section 10(b) and Rule 10b-5, and (2) Duckson's and the Fund's direct violations of Section 17(a) of the Securities Act. Additionally, the jury, as finder of fact, concluded that during Periods 1 and 2, Duckson and the Fund's direct violations of Section 17(a) were made knowingly, with recklessness, and negligently. The jury also necessarily found that the defendants' violations of Section 10(b) and Rule 10b-5 were made knowingly or with reckless disregard.

In November 2013, the SEC sought remedial relief from the district court. The district court ordered the following: (1) that the Fund, TFFM, and Duckson be permanently enjoined from committing any future violations of the Exchange Act and the Securities Act and from aiding and abetting violations of any securities laws; (2) that Duckson be barred from serving as an officer or director of a publicly traded corporation for a period of ten years from the date the judgment in this action was entered; (3) disgorgement by the Fund in the amount of $12,063,430, plus prejudgment interest in the amount of $2,519,751; (4) joint and several disgorgement by Duckson and TFFM in the amount of $2,960,771, plus prejudgment interest in the amount of $340,862; (5) additional disgorgement by Duckson in the amount of $709,500 and $210,855 prejudgment interest on that amount, $466,343 and $63,209 prejudgment interest on that amount, and $275,000 and $31,430 prejudgment interest on that amount; and (6) civil penalties against Duckson and TFFM in the amounts of $50,000 and $15,000, respectively.

## C. *Motion for New Trial*

Duckson subsequently sought a new trial under Federal Rule of Civil Procedure 59(a) or, alternatively, an amended judgment pursuant to Rule 59(e).

Duckson first argued that the district court erred by refusing to permit certain complete appraisals to go to the jury; he contended that the appraisals show that his belief that the Fund had not "collapsed" was justified and that he therefore did not make misrepresentations regarding the quality of those investments. According to Duckson, the district court "repeatedly rebuffed Duckson's attempt to introduce the critical—and unchallenged—appraisals at trial," and only allowed small portions of those appraisals into evidence near the end of the five-week trial. He argued that the lack of this evidence prevented the jury from having a complete picture of the evidence and that, had the district court admitted it, the jury could not have supported its verdicts regarding scienter.

The district court disagreed for three reasons. First, it found that the jury was presented with "a significant amount of testimony and documentary evidence relating to the appraisals," including Duckson's own testimony and "pages from the appraisals themselves and summary charts showing the property values presented by the appraisals." According to the court, the jury determined the credibility of testimony related to the appraisals and rejected Duckson's view of that evidence.

Second, the district court found that it had "carefully considered and ruled on the admission of testimony relating to appraisals and on the appraisals themselves on a case-by-case basis and did so consistent with its discretion with respect to evidentiary rulings." (Citation omitted.) As examples, the court noted that it excluded some appraisals for lack of foundation and others under Rule 403.

Finally, the court found its "evidentiary rulings on the relevance and prejudicial nature of certain information regarding the appraisals . . . consistent with the totality of the evidence presented at trial." As an example, the court pointed out that Duckson began the appraisal process in January 2009, which was after he had made several misrepresentations to brokers and investors.

Duckson also argued that the Special Verdict Form "muddled" the jury's verdict because it "was divided into two time periods, and both time periods included alleged misrepresentations associated with a single document from March 2008." According to Duckson, it was not clear whether the jury had found multiple misstatements with at least one in each time period, or whether it simply assigned the misrepresentations associated with the March 2008 document to both time periods to indicate that the jury had found more than one misrepresentation.

The district court concluded that the jury verdict was not confusing. First, it rejected Duckson's argument that the jury assigned misrepresentations from the March 2008 document to Period 2 because the court explicitly carved out the March 2008 document from Period 2 in the jury instructions as a basis for misrepresentations.

Second, the court found that the Special Verdict Form was proper because it addressed what the jury needed to know, while remaining succinct. The court pointed out that it incorporated elements of both Duckson's and the SEC's proposed verdict forms. The court also rejected Duckson's argument that the form, in conjunction with the jury instructions, was "general," pointing out that "it included details relating to two different time periods, actions of different entities, and accounted for a number of different sources of misrepresentations." The court found the form unambiguous and supported by the totality of the evidence presented at trial.

II. *Discussion*

On appeal, Duckson renews his arguments that the district court abused its discretion by (1) refusing to permit certain complete appraisals to go to the jury, and (2) submitting to the jury the court's Special Verdict Form and rejecting Duckson's proposed special verdict form.

## A. *Appraisals*

Duckson argues that the district court erred in refusing to admit the full third-party appraisals of the Fund's real estate assets. According to Duckson, the appraisals supported the Fund's and Duckson's optimistic outlook of the Fund's future.

"'We review a district court's denial of a motion for new trial with great deference, reversing only if the district court clearly abused its discretion.'" *White v. McKinley*, 605 F.3d 525, 533 (8th Cir. 2010) (quoting *Wilson v. City of Des Moines*, 442 F.3d 637, 640 (8th Cir. 2006)). "'When a motion for new trial is based on rulings regarding the admissibility of evidence,'" we will not reverse the district court in the absence of "'a clear and prejudicial abuse of discretion.'" *Id*. (quoting *Wilson*, 442 F.3d at 640–41). "Only if the excluded evidence 'is of such a critical nature that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted has a district court so abused its discretion.'" *Id*. (quoting *Wilson*, 442 F.3d at 641).

We hold that the district court did not abuse its discretion by declining to admit the complete versions of the appraisals. First, in each instance when the district court declined to admit the appraisals, it did so on a case-by-case basis. As the district court noted, "certain appraisals were excluded early in trial for lack of foundation [under Rule 104], and certain appraisal-related testimony was excluded on Rule 403 grounds." Duckson has not argued or otherwise demonstrated how the district court erred in making these individualized determinations on each of its evidentiary rulings as to the appraisals on the basis of Rule 104 or Rule 403.

Second, Duckson abandoned efforts to admit the complete appraisals and instead offered the summaries as an alternative to introducing the complete appraisals. In moving for the admission of these summaries into evidence, Duckson's counsel never argued that the complete appraisals were necessary for his case.

Third, Duckson cannot show that he was prejudiced by the court's rulings. As the district court noted, "a significant amount of testimony and documentary evidence relating to the appraisals was presented to the jury." The district court admitted the summaries of the appraisals into evidence and permitted multiple witnesses to testify about the substance of the appraisals, including Duckson.

## B. *Verdict Form*

Duckson also argues that the district court erroneously submitted to "the jury a general verdict form that simply asked whether or not the securities laws were violated" instead of submitting his proposed "verdict form that specifically set forth each alleged misstatement which would allow the jury to make the determination of which statements were materially misleading and which ones were not." Duckson maintains that if the court had set forth separately in the verdict form each alleged misstatement or omission, then the jury could have provided the court "guidance in imposing the remedies that the SEC sought[,] all of which were dependent on repeated and continual misrepresentations or omissions." Duckson contends that the lack of specificity in the Special Verdict Form forced the district court "to guess what was in the jury's mind when it imposed remedies." As a result, Duckson argues that the district court "substitut[ed] itself as the trier of fact" and took decisions regarding the extent of the violations "out of the jury's hands."

"Rule 49 of the Federal Rules of Civil Procedure grants district courts the discretion to use special verdicts." *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 771 (8th Cir. 1998). It provides that "[t]he court *may* require a jury to return only a special verdict in the form of a special written finding on each issue of fact." Fed. R. Civ. P. 49(a)(1) (emphasis added). As a result, "[a] party may not demand a special verdict as a matter of right. The rule is permissive, not mandatory." *New Orleans & Ne. R.R. Co. v. Anderson*, 293 F.2d 97, 99 (5th Cir. 1961). The "discretion of the trial court [under Rule 49] has been seen by appellate courts as 'not ordinarily

reviewable.'" *Davis v. Ford Motor Co.*, 128 F.3d 631, 633 (8th Cir. 1997) (citations omitted).

The question in the present case is whether the district court abused its discretion by rejecting Duckson's proposal to set forth separately in the verdict form each alleged misstatement or omission so that the jury could provide the court "guidance" in imposing remedies.

After the jury found Duckson liable on Counts I, II, and III of the Second Amended Complaint, the SEC sought remedial relief against Duckson in the form of (1) permanent injunctions from committing further violations of the laws and regulations that the defendants were found to have violated; (2) a bar against Duckson serving as an officer or director of publicly held companies in the future; (3) disgorgement of funds received from a number of sources; and (4) civil penalties. Because the SEC sought equitable relief, "it was for the judge to decide, consistent with the jury's finding of liability, . . . what equitable relief to impose." *S.E.C. v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002). "In fashioning equitable relief, the district court may take into account facts that were not determined by the jury, but it may not base its decision on factual findings that conflict with the jury's findings." *Salitros v. Chrysler Corp.*, 306 F.3d 562, 573 (8th Cir. 2002) (citation omitted).

Likewise, courts have the authority to determine the amount of the penalty for securities law violations. *See* 15 U.S.C. § 77t(d)(2)(A) ("The amount of the penalty shall be determined by the court in light of the facts and circumstances."); 15 U.S.C. § 78u(d)(3)(B)(I) (same). "Courts have broad discretion in imposing civil penalties . . . ."*U.S. S.E.C. v. Quan*, No. CIV. 11-723 ADM/JSM, 2014 WL 4670923, at *16 (D. Minn. Sept. 19, 2014), *amended*, No. CIV. 11-723 ADM/JSM, 2014 WL 6982914 (D. Minn. Dec. 10, 2014) (citation omitted). A "district court's imposition of the civil penalty [is reviewed] for abuse of discretion." *S.E.C. v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013) (citing *S.E.C. v. Kern*, 425 F.3d 143,

153 (2d Cir. 2005) ("The tier determines the maximum [civil] penalty, with the actual amount of the penalty left up to the discretion of the district court.")).

In the present case, Duckson has not shown how the district court's factual findings *conflict* with the jury's findings, as the jury found Duckson liable on all three counts.

Duckson relies on *Dairy Queen v. Wood*, 369 U.S. 469 (1962), in support of his argument that the district court erred in rejecting his proposal to set forth separately in the verdict form each alleged misstatement or omission. Duckson's reliance on *Dairy Queen* "is misplaced." *See Phillips v. Kaplus*, 764 F.2d 807, 814 (11th Cir. 1985).

> *Dairy Queen* held that a request for a nominally equitable remedy could not be used to convert what was otherwise a legal claim into an equitable one in order to defeat the right to a jury trial. In that case, the court examined the plaintiff's request for an accounting, determined that it was really a legal claim for breach of contract, and properly rejected plaintiff's equitable characterization of the claim.

*Id*. Here, Duckson received a jury trial on his underlying liability. But, having been found liable by the jury, he was not entitled to have the jury decide the remedies. *See S.E.C. v. Commonwealth Chem. Sec., Inc*., 574 F.2d 90, 95–96 (2d Cir. 1978) (holding that SEC's action for injunction and disgorgement was analogous to traditional jurisdiction of equity to award restitution, meaning that the defendants were not entitled to a jury trial).

Duckson also argues that because the March 2008 Confidential Operating Memorandum (COM) was used for a few weeks until the Fund issued the November 2008 COM, the jury may have found liability for Period 2—late October 2008 through December 2009—based solely on misstatements and omissions made in the

-14-

March 2008 COM. But, as the district court pointed out, "[i]n the Jury Instructions, the Court explicitly carved out the March 2008 document from Period 2 as a basis for misrepresentations." The district court specifically instructed the jury that "the Fund's offering documents dated November 2008, February 2009, and November 2009" concerned "Time Period 2" as set forth in the verdict form. Consequently, as the district court concluded, "the jury necessarily based its verdict on more than the March 2008 document."

Finally, the district court's verdict form did not deprive Duckson of a meaningful right to appellate review of the remedies determination or the liability finding. The court issued a 26-page memorandum and order concerning the SEC's motion for remedies against the defendants. Likewise, the jury instructions identified the documents that the SEC alleged were misleading, and the jury was advised of which time periods these documents fell into when indicating its verdict on the district court's form.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____