# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3031

_____

| | |
|---|---|
| Gerald G. Salitros, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Chrysler Corporation, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  May 13, 2002

Filed:   October 3, 2002

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

DaimlerChrysler Corporation, formerly known as Chrysler, appeals from the judgment entered against it awarding Gerald Salitros $100,000 in punitive damages and $445,516 in front pay on his claim that Chrysler retaliated against him for exercising his rights under the Americans With Disabilities Act.  Chrysler also appeals the district court's award to Salitros of $128,268.52 in attorney's fees and costs. Chrysler contends that the evidence was not sufficient to support the retaliation claim or the award of punitive damages, and that the punitive damages award cannot stand because the jury failed to award compensatory damages. Chrysler also contends that the district court abused its discretion in awarding front pay and in fixing the

amount of the attorney's fee award. We affirm the district court's judgment and fee award.

We recite the facts in the light most favorable to the jury's verdict. Salitros started work at the Chrysler Parts Distribution Center in Minneapolis in 1988, at the age of 46. He worked as a stock-keeper, putting away the merchandise coming into the warehouse. In February 1989, he injured his back in an accident at work in which he fell eighteen and a half feet and landed on his back and neck on cement. When he came back to work after the accident, he had difficulty finding work he could do at the warehouse without aggravating his injuries. He had medical restrictions on the amount of weight he could lift and the range and repetitiveness of movements he could perform. He found that he could work in the Materials Return Area, putting away miscellaneous parts that dealers returned to the warehouse, because the parts were returned in small quantities, so the work was not as repetitive as other jobs he had tried, and because not much bending, twisting, or climbing was required.

For the next eight years, Salitros and Chrysler were in regular conflict over what duties Salitros could perform without exceeding his medical restrictions. The ongoing dispute about Salitros's restrictions was accompanied by personal animosity. Salitros's union representative, Mark Stone, testified that he heard one of Chrysler's supervisors refer to Salitros's grievances as "a big joke," and he heard them say, "[S]hould we fuck with Gerry today or leave him alone?" The strain wore heavily on Salitros, who was sometimes reduced to tears, and who looked "sad all the time" and was "aging rapidly."

On January 23, 1997, Mark Stone told Salitros that another worker, with similar medical restrictions to Salitros's and more seniority, had bid on the Materials Return Area job and that Chrysler was going to give the job to the other employee. In fact, Richard Haynes, Chrysler's Parts Distribution Center manager, testified that he had decided informally that Salitros ought to be able to keep the job, but the

decision was not to be announced until the official date for reassignments. In the meantime, Haynes planned to allow the other employee to try the job for four hours on January 24, with Salitros assigned to other duties that day. When Salitros heard from the union representative that the other employee was going to get the Materials Return job and then was told at the warehouse office that the employee would be doing the Materials Return job the next day, he became very upset. He called his doctor and went by the warehouse office to announce that he wouldn't be in the next day because he was going to see his doctor and file an EEOC charge. He did both.

Three days later, on January 27, Salitros's doctor sent a fax to the union benefits representative at Chrysler stating that Salitros was off work indefinitely. Salitros also called the union benefits representative to make sure he delivered the fax to Chrysler management. Chrysler received the fax, but took the position that it was insufficient to satisfy the notice requirement in the Chrysler-UAW collective bargaining agreement. The collective bargaining agreement provided that an employee could be fired if he was absent for five days without notifying the plant in accordance with the procedure set out in the local agreement. The local agreement described the procedure for reporting absences as follows:

> It is expected and appreciated that employees who are absent from work call the warehouse phone number during the first two hours of their starting time on the day of their absence. Absences and tardiness may be reported by telephone or by a fellow employee, but this does not constitute an excused absence.

The union representative phoned Salitros on January 31 and told him that Chrysler was taking the position that the fax was not sufficient notification and that Salitros had to call personally and talk to a supervisor. While Salitros was on the phone with the union representative, he heard Robert Schulte, the warehouse manager, come in and speak to the representative, saying, "[T]hat son of a B, ah, filed another EEOC charge." Salitros also heard Schulte say he was going to fire Salitros. Salitros

-3-

testified that he did not feel capable of speaking to his supervisors at that point, and he had been told earlier by the union benefits representative that fax notice was telephone notice. He did not telephone the plant. Schulte sent him a letter that very day terminating his employment for failure to give notice of his absence. The union representative testified that at a later meeting, someone asked Haynes why he wouldn't accept the fax as notice, and Haynes said: "[B]ecause I want to teach Gerry a lesson."

The union filed a grievance regarding the termination, and as a result of the grievance, Chrysler reinstated Salitros on April 8, 1997, retroactive to January 24. At the same time, Chrysler notified Salitros that it had placed him on medical leave. Salitros never returned to work, but remained on medical leave through the date of trial. His doctor testified that he was not able to return to work at Chrysler because the stress he experienced there aggravated his physical symptoms. His vocational rehabilitation expert opined that, other than employment with Chrysler, Salitros's job opportunities would probably be only "intermittent and insubstantial." He received disability payments, which were substantially less than he would have made had he been able to work.

Salitros brought this suit alleging Chrysler violated the Americans with Disabilities Act, both by failing to make reasonable accommodation for Salitros's disability and by retaliating against Salitros for asserting his rights under the Act. He also alleged obstruction of his attempts to obtain workers' compensation benefits and intentional and negligent infliction of emotional distress.[1]

The case was tried to a jury, which found that Chrysler did not discriminate against Salitros on the basis of his disability or fail to make reasonable

---

[1]The obstruction of workers' compensation benefits and negligent infliction of emotional distress claims were dismissed by Salitros.

-4-

accommodation for his disability and that Chrysler did not intentionally inflict emotional distress. The jury did, however, find that Chrysler had retaliated against Salitros for exercising his rights under the Americans with Disabilities Act. The jury found that Salitros had no lost wages or benefits through the date of the verdict, and no other actual damages, but it awarded him $100,000 in punitive damages.

The issue of front pay being reserved for the court, the district judge ruled that Salitros was entitled to front pay of $445,416. He also awarded Salitros attorney's fees and costs of $107,779.25 and $20,489.27, respectively.

## I.

## A.

Chrysler first contends that there is insufficient evidence to support the jury's verdict that it engaged in retaliation against Salitros for exercising his rights under the Americans with Disabilities Act and that the district court should have granted its motion for judgment as a matter of law.

We review de novo the district court's denial of a motion for judgment as a matter of law. Stauch v. City of Columbia Heights, 212 F.3d 425, 429 (8th Cir. 2000). Judgment as a matter of law is proper only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). In evaluating the sufficiency of the evidence, we must review all the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party and disregarding evidence in favor of the moving party that the jury is not required to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). Put another way, we must accept all the evidence favoring Salitros, but only the evidence favoring

Chrysler that is uncontradicted and unimpeached and that comes from disinterested witnesses.  See id.

To prove his claim for retaliation, Salitros had to show that he engaged in activity protected under the Americans with Disabilities Act, that he suffered an adverse employment action, and that there is a causal connection between the protected activity and the adverse action.  42 U.S.C. § 12203 (1994); Schoffstall v. Henderson, 223 F.3d 818, 826 (8th Cir. 2000).

Chrysler first contends that Salitros did not produce evidence that he engaged in a protected activity under the Americans with Disabilities Act.  At trial, Salitros testified:

> Q:  And did you file a charge with the EEOC?
> A:  Yes, I did.
> Q:  When did you file the charge?
> A:  I believe, ah, January 30th.

Chrysler did not object to this evidence, and the admission of it is not plain error. Moreover, the EEOC charge was only one incident in a long history of assertions by Salitros of his rights under the Americans with Disabilities Act, as our statement of facts shows.  There is evidence of protected activity.

Next, Chrysler contends that there was no evidence the reason Chrysler fired Salitros was because of his exercise of statutory rights and that there was unrebutted evidence that the real reason for the firing was the inadequacy of Salitros's notice of absence.  Salitros testified that when he was on the telephone with Mark Stone on January 31, he heard Robert Schulte speaking to Stone, and that Schulte said, "[T]hat son of a B . . . filed another EEOC charge."  Salitros's testimony was corroborated by Stone, who said that Schulte walked into Stone's office with an EEOC charge in his hand and made that statement.  The jury could consider the use of this language in

-6-

reporting the filing of the EEOC charge relevant to the motivation for firing Salitros the same day. See Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1195-96 (8th Cir. 2001) (temporal proximity between assertion of rights and adverse employment action significant in finding causation).

Moreover, there was other evidence that Chrysler's managers were impatient with Salitros's insistence that he could only do the Materials Return Area job. For instance, according to Mark Stone, one supervisor called one of Salitros's grievances concerning work outside his restrictions "a big joke." Even though the jury found that Chrysler did not violate Salitros's right to reasonable accommodation, it could consistently find that Chrysler retaliated against Salitros for his assertion of a good faith, reasonable belief that he was entitled to greater accommodation than Chrysler was affording him. See Buettner v. Arch Coal Sales Co., 216 F.3d 707, 714 (8th Cir. 2000) ("A plaintiff need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law."), cert. denied, 531 U.S. 1077 (2001).

There was also abundant evidence from which the jury could have inferred that Chrysler's reliance on inadequacy of the faxed notice was pretextual. First of all, Chrysler had actual notice before firing Salitros that he would be absent from work for medical reasons, since Salitros stopped by the warehouse office before leaving on January 23 and announced that he wouldn't be in the next day and Chrysler admittedly received Dr. Dorn's January 27 fax. Second, the contract with the union local was at best ambiguous about whether an employee had to call in personally, and the fax from Dr. Dorn arguably satisfied the contract requirements of telephonic notification. Third, Stone reported that at the grievance meeting, Chrysler's manager Richard Haynes said he wouldn't accept the fax notice, saying, "I want to teach Gerry a lesson." The jury could infer that this expression of animus was more in keeping with retaliation than with dissatisfaction over the form of Salitros's notice of absence.

-7-

Finally, another employee testified that he had once had his wife call to report his absence, rather than telephoning personally, and he had not been disciplined for doing so. An employee can show pretext by showing that the employer meted out more lenient treatment to similarly situated employees who were not in the protected class or did not engage in protected activity. Erickson v. Farmland Indus., Inc., 271 F.3d 718, 727 (8th Cir. 2001).

We conclude that there was sufficient evidence to support the verdict finding retaliation.

B.

Chrysler also argues that there was no evidence to support the award of punitive damages under the standard adopted for liability under 42 U.S.C. § 1981a(b)(1) in Kolstad v. American Dental Association, 527 U.S. 526 (1999). Chrysler argues that it did not retaliate against Salitros, a question that the jury decided against Chrysler on sufficient evidence. Further, it argues that if it did retaliate, it did not do so with malice or reckless indifference to Salitros's federally protected rights. Chrysler's manager Richard Haynes was quoted as saying he was going to teach Salitros a lesson, in circumstances that support the inference that the lesson to be learned was either not to file EEOC charges or not to protest work assignments that he thought exceeded his medical restrictions. Haynes testified that he had received training on the Americans With Disabilities Act. A jury could conclude that Haynes acted in reckless indifference to whether he was violating Salitros's federally protected rights. Haynes's malice may be imputed to Chrysler because he was serving in a managerial capacity and acting in the scope of his employment. Foster v. Time Warner Entm't Co, 250 F.3d 1189, 1196-97 (8th Cir. 2001) (quoting Kolstad, 527 U.S. at 543). Using the proper standard of review, which requires us to take the evidence in the light most favorable to Salitros, there is sufficient evidence to support the verdict holding Chrysler liable for punitive

damages. Our reasoning also leads us to deny Chrysler's separate argument that the district court erred in submitting punitive damages to the jury.

II.

Chrysler asks us to reverse the district court's award of front pay in the amount of $445,516, representing seven years worth of wages and benefits, up to September 8, 2007, Salitros's anticipated retirement date. Both the district court's decision to award front pay and its decision as to the amount of front pay are subject to review only for abuse of discretion. Mathieu v. Gopher News Co., 273 F.3d 769, 778-79 (8th Cir. 2001).

As a threshold matter, Chrysler complains that the district court awarded front pay without an evidentiary hearing, relying on documents that had never been entered into evidence and on which Chrysler had no opportunity to cross examine any witness. Salitros presented an expert witness at trial, who testified about how he arrived at figures for lost wages and benefits in connection with back pay. Front pay is decided by the court, not the jury, Bevan v. Honeywell, Inc., 118 F.3d 603, 613 (8th Cir. 1997), and so there was no testimony at trial about front pay per se. After trial, the district court ordered the parties to brief the question of whether Salitros was entitled to front pay. The parties filed briefs simultaneously. Chrysler's brief argued only that any award of front pay was inappropriate in light of the jury verdict and Chrysler's reinstatement of Salitros, whereas Salitros asked for a specific amount of front pay and also filed his attorney's affidavit and charts showing future lost wages and benefits, up to Salitros's anticipated retirement date. The affidavit stated that the front pay exhibits were prepared by the same firm that prepared the back pay exhibits that were in evidence at trial. Indeed, the front pay summary exhibit was virtually identical to the back pay exhibit in evidence, except for the dates covered and the addition of projected pension and social security benefits in the front pay exhibit.

According to Chrysler, Chrysler asked the judge's law clerk for permission to respond to the affidavit, but was denied permission. Chrysler's attorney admitted at oral argument that Chrysler did not file a motion in the district court asking for a hearing on front pay. Without conducting a hearing, the district court entered an award for front pay in the amount Salitros requested. Only after the ruling did Chrysler object in the district court to the district court's reliance upon the charts, which had not been admitted into evidence or subject to cross-examination.

Even though front pay is an equitable remedy, see Excel Corp. v. Bosley, 165 F.3d 635, 639 (8th Cir. 1999), a court may not bypass the procedural protections of our adversary system in resolving disputed adjudicative facts, Lussier v. Runyon, 50 F.3d 1103, 1113 & n. 13 (1st Cir. 1995), and a front pay award must be based on evidence. See Davoll v. Webb, 194 F.3d 1116, 1143-45 (10th Cir. 1999). We are satisfied that neither of these principles was transgressed in this case. Salitros's expert testified at trial about his sources and the methodology he used in preparing back pay exhibits. Chrysler had the opportunity to cross examine Salitros's expert about the information and assumptions on which the back pay exhibits were based. The front pay exhibits were obviously prepared using the same methodology, simply extended for future years. After Salitros filed the affidavit with the exhibits attached, Chrysler did not move to strike the exhibits or ask the court for an evidentiary hearing, but waited to object until the district court had already ruled on the front pay motion.

In a similar case, the Seventh Circuit held the district court did not err in granting front pay on the basis of documents that had been submitted to the court after trial, but never introduced into evidence. Downes v. Volkswagen of America, Inc., 41 F.3d 1132, 1141-43 & n.10 (7th Cir. 1994). The Seventh Circuit observed that, since front pay is not submitted to the jury, it would be anomalous to introduce evidence on that issue before the jury, but the district court based its front pay calculation on expert trial testimony concerning back pay. In the district court, VW

-10-

had not objected to the adequacy of the procedures afforded it to challenge the front pay evidence:

> Downes raised the issue of front pay in the complaint and VW discussed the issue in its trial brief. If, after notice of this sort, VW nonetheless considered Downes' post-trial submission of front pay evidence to be prejudicial or a surprise, VW could have requested an evidentiary hearing or additional time to respond to Downes' post-trial motion. VW did neither. . . .

Id. at 1142. Similarly, in this case, Chrysler had the chance to cross examine Salitros's expert on the methodology that was used on both the back pay and front pay issues. Chrysler neither filed a motion for evidentiary hearing nor made any other objection to the procedure used by the district court until after the district court had ruled on Salitros's motion. We conclude that the district court did not err in deciding the front pay issue on the record before it. Cf. Moysis v. DTG Datanet, 278 F.3d 819, 829 (8th Cir. 2002) (district court did not err in denying front pay without hearing where plaintiff had failed to offer to district court either a reason why hearing was necessary or a showing of data that would support award).

Chrysler argues that the district court erred in awarding front pay when Chrysler had already reinstated Salitros. Reinstatement is the preferred remedy for unlawful employment discrimination, and front pay is the disfavored alternative, available only when reinstatement is impracticable or impossible. Kucia v. Southeast Ark. Cmty. Action Corp., 284 F.3d 944, 948-49 (8th Cir. 2002). Extreme animosity between the employer and employee may make an amicable and productive work relationship impossible and thus justify an award of front pay. Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 498-99 (8th Cir. 1998). In this case, the district court found that the reinstatement Chrysler offered Salitros was illusory, because Salitros was never able to work after he was reinstated, and his inability to work resulted from Chrysler's ill-treatment: "He remained on medical leave because of physically and

psychologically damaging harassment experienced at the worksite." Salitros's income while on medical leave showed a "sharp disparity" with his normal income. The court further held that Salitros could not be expected to return to Chrysler in the future. "Given the animosity between the parties, an order reinstating plaintiff to defendant's workplace would be antithetical to his health and is entirely impracticable. . . ." Accordingly, the court held an award of front pay was necessary. We cannot say that this reasoning reveals an abuse of discretion.

Chrysler also argues that Salitros cannot receive front pay for any period in which he was unable to work. Chrysler's argument depends on its assertion that it did nothing to cause Salitros to go on medical leave. This assertion is contrary to findings of the district court:

> The jury's finding of retaliation supports the Court's conclusion that it was defendant's retaliatory acts which drove plaintiff to sick leave. Defendant cannot use the sick leave, engendered by its own conduct, to deny plaintiff front pay. If defendant were allowed to profit from its illegal retaliation, the result would directly contradict the ADA's purpose.

The district court found that Salitros was not physically unable to work, but psychologically unable to return to a hostile workplace. These findings are not clearly erroneous and they distinguish Salitros's case from the principle Chrysler relies on, that "an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the employment discrimination." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995) (internal quotation marks omitted)(emphasis added).

Chrysler argues that the award of front pay is contrary to the jury's verdict exonerating Chrysler on Salitros's disability discrimination and intentional infliction of emotional distress claims. In fashioning equitable relief, the district court may take

into account facts that were not determined by the jury, but it may not base its decision on factual findings that conflict with the jury's findings. Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1101 (8th Cir. 1982). The district court's finding of animosity between the parties was not based on disability discrimination on Chrysler's part, but on retaliation. Therefore, the district court's reasoning did not conflict with the verdict for Chrysler on Salitros's discrimination claim. The jury's instructions on the intentional infliction of emotional distress claim required them to find that "the defendant's conduct was so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable in the civilized community." No such finding was required to justify front pay. Again, no conflict between verdict and equitable award appears.

Chrysler also argues that the award of front pay conflicts with the jury's finding that Salitros suffered no lost wages and benefits. Determination of front pay is entrusted to the district court's discretion, Excel Corp. v. Bosley, 165 F.3d 635, 639 (8th Cir. 1999), and the answer to whether the employee should have been expected to return to work may vary according to the time period involved. See id. at 640. The district court found that animosity between Chrysler and Salitros was such that Salitros could not be expected to return to Chrysler after trial. The court found that Salitros intended to work until the normal retirement age. The court stated: "Based on the jury verdict of retaliation, and the Court's own conclusion of sufficient animus to preclude reinstatement, the Court finds an award of front pay is warranted." We cannot say the court abused its discretion in so finding.

Chrysler also attacks the amount of front pay awarded by the district court. First, Chrysler contends that the award should be reduced by the workers' compensation, social security payments and disability payments that Salitros receives. Our circuit has treated the reduction of pay awards by other benefits as a legal question, rather than as something entrusted to the district court's discretion. See Arneson v. Callahan, 128 F.3d 1243, 1247-48 (8th Cir. 1997); Doyne v. Union

-13-

Elec. Co., 953 F.2d 447, 451 (8th Cir. 1992).  But see Lussier v. Runyon, 50 F.3d 1103, 1109-10 (1st Cir. 1995) (whether to deduct collateral source payments within district court's discretion).  We therefore review de novo the district court's treatment of this issue.

The district court held, "Defendant cannot use the sick leave, engendered by its own conduct, to deny plaintiff front pay."  Under the collateral source rule, an employer is entitled to no credit for moneys paid to the injured employee by third parties.  Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1112-14 (8th Cir. 1994).  Workers' compensation benefits are considered a collateral source, Moysis v. DTG Datanet, 278 F.3d 819, 828 (8th Cir. 2002), as are unemployment insurance and social security payments.  See Gaworski, 17 F.3d at 1112.  Disability insurance payments may be collateral source payments, depending on circumstances, including whether the disability resulted from the employer's conduct.  See Arneson v. Callahan, 128 F.3d 1243, 1248 & n.8 (8th Cir. 1997); see generally Hamlin v. Charter Township of Flint, 165 F.3d 426, 435-36 (6th Cir. 1999) (using multifactor test to determine whether "disability pension" is "collateral").  The district court found that Salitros's medical leave was made necessary by the "physically and psychologically damaging harassment experienced at the worksite."  The district court did not err in fixing the amount of the front-pay award.

Chrysler also contends that the front pay award improperly included compensation for benefits that Salitros already receives as a Chrysler employee on disability.  However, Salitros's expert at trial indicated that his account of damages did not include benefits that Salitros was receiving while on disability.  The chart on which the court based the front pay award is evidently based on the same methodology.  This argument has no merit.

III.

Chrysler attacks the jury's award of punitive damages on several grounds. First, Chrysler contends that punitive damages could not be awarded at all because the jury did not award compensatory damages.

The federal courts are split several ways over the issue of whether federal law generally, and 42 U.S.C. § 1981a specifically, allow an award of punitive damages without a supporting award of actual or nominal damages.

The most austere position is that taken by the Fourth Circuit in a Fair Housing Act case, that an award of punitives cannot stand without compensatory damages. People Helpers Found. v. Richmond, 12 F.3d 1321, 1327 (4th Cir. 1993). The court summarized the common law rule as holding that "punitive damages are not appropriate in cases where a plaintiff has failed to demonstrate actionable harm." Id. The court held that the wide currency of the common-law rule made it reasonable to apply the rule in federal cases in which the statute was silent on the subject: "[W]e are persuaded by the law of a majority of the states, the reasoning behind the law, and the federal case law applying the rule in the absence of statutory language to the contrary that punitive damages are not recoverable in this circumstance." Id. Our Circuit long ago rejected the notion that compensatory damages, as opposed to nominal damages, were prerequisite to an award of punitives. Goodwin v. Circuit Court of St. Louis County, 729 F.2d 541, 548 (8th Cir. 1984).

Other courts have held that only where there has been a violation of constitutional rights, may punitive damages be awarded without an award of compensatory or nominal damages. In Louisiana Acorn Fair Housing v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000), cert. denied, 532 U.S. 904 (2001), this rule led to reversal of an award of punitive damages in a Fair Housing Act case, because a violation of the Fair Housing Act did not amount to a constitutional violation. In

Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000), cert. denied, 531 U.S. 1069 (2001), the Third Circuit articulated the same rule, but reached the opposite result, reversing the district court for failing to submit punitives in a Fair Housing Act case in which no actual damages were awarded. See Searles v. Van Bebber, 251 F.3d 869, 880-81 (10th Cir. 2001) ("We note that, as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury."), cert. denied, 122 S. Ct. 2356 (2002). We have, in fact, held that liability for nominal damages follows automatically from a finding of certain constitutional violations, Risdal v. Halford, 209 F.3d 1071, 1072 (8th Cir. 2000), and this would support a rule permitting punitive damages upon the finding of such violations. See Goodwin, 729 F.2d at 548 (punitive damages permitted in case where nominal, but not actual, damages awarded). However, no one has argued that retaliation for activity protected under the ADA is a constitutional violation,[2] and so this rule would not be applicable in our case.

In the First and Eleventh Circuits, punitive damages may be awarded under section 1981a if there was an award of backpay, but no compensatory or nominal damages. EEOC v. W & O, Inc., 213 F.3d 600, 615 (11th Cir. 2000); Provencher v. CVS Pharmacy, 145 F.3d 5, 12 (1st Cir. 1998). The First Circuit cited the reasoning of the Seventh Circuit in an earlier case that back pay is compensatory in function, and in fact represents the most direct economic loss in an employment discrimination case. Provencher, 145 F.3d at 11-12 (citing Henessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1352 (7th Cir. 1995)). Therefore, the First Circuit held that an award of backpay should be sufficient to support an accompanying award of punitive

_____

[2]In Hicks v. Brown Group, Inc., 902 F.2d 630, 653 (8th Cir. 1990), we went further and held that nominal damages follow automatically from the violation of any "absolute right" and that intentional racial discrimination in employment was such an absolute right. Hicks was vacated by the Supreme Court on a different ground. Brown Group, Inc. v. Hicks, 499 U.S. 914 (1991). A vacated decision is deprived of its precedential effect. See Landrum v. Moats, 576 F.2d 1320, 1324 (8th Cir. 1978).

-16-

damages. Id. However, the First Circuit has held that without compensatory or nominal damages or backpay, an award of punitives cannot stand. Kerr-Selgas v. American Airlines, Inc., 69 F.3d 1205, 1214-15 (1st Cir. 1995). The Eleventh Circuit reserved this question. W & O, 213 F.3d at 615 n.5.

The most liberal position is that section 1981a does not require any other sort of damages to be awarded as a prerequisite to punitive damages. The Seventh Circuit held that section 1981a permits award of punitive damages without compensatory damages or back pay, reasoning from "federal common law" in section 1983 cases. Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008, 1010 (7th Cir. 1998). The Second Circuit also held that an award of actual or nominal damages is not a prerequisite to punitive damages, citing the plain language of section 1981a, which does not mention such a prerequisite, and the lack of a uniform common law rule on the subject. Cush-Crawford v. Adchem Corp., 271 F.3d 352, 357-59 (2d Cir. 2001).

We need not decide whether an award of punitives could stand without any award of compensatory or nominal damages, because the award of front pay in this case serves the purpose of compensating Salitros for economic losses resulting from the retaliation. We agree with the First and Eleventh Circuits that the common law policy prohibiting punitive damages where the plaintiff has not shown any harm is not implicated where the plaintiff has shown wage loss. See Provencher, 145 F.3d at 12; W & O, 213 F.3d at 615. Therefore, we conclude that the award of punitive damages was proper.

Chrysler further argues that, if punitive damages can be awarded at all without an award of compensatory damages, then the $100,000 award in this case did not bear a rational relationship to the jury's finding of no actual damages. Therefore, Chrysler contends, the punitive award was unconstitutional under the principles of Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 18 (1991). See also BMW

of North America, Inc. v. Gore, 517 U.S. 559, 580-83 (1996) (requiring a "reasonable relationship" between actual and punitive damages). We review de novo the district court's determination of the constitutionality of an award of punitive damages. Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 436 (2001). Lengthy discussion of this point is rendered unnecessary by our earlier discussion, for rather than comparing the $100,000 punitive damages award to the jury's zero compensatory damages award, by the same reasoning we employed above, we conclude that we more properly compare the amount of punitives to the $445,516 front-pay award. There is no tenable argument that punitives of less than one-fourth of the front pay are excessive in relation to Salitros's economic losses. For the same reason, we deny Chrysler's contention that the district court abused its discretion in denying remittitur. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 496 (8th Cir. 2002) (denial of remittitur reviewed for abuse of discretion).

## IV.

In something of a scattershot approach, Chrysler raises various evidentiary issues, which we review only for abuse of discretion, Williams v. City of Kansas City, Mo., 223 F.3d 749, 754 (8th Cir. 2000), and as to which no abuse of discretion appears. In addition, Chrysler contends that the district court should have granted it a new trial because it found a document in its files that had apparently always been there, but which it did not discover until after the jury's verdict. No abuse of discretion appears in the district court's denial of a new trial on this ground. See Stauch v. City of Columbia Heights, 212 F.3d 425 (8th Cir. 2000) (new trial ruling reviewed for abuse of discretion); Moysis v. DTG Datanet, 278 F.3d 819, 829 n.3 (8th Cir. 2002) (Evidence which could and should have been presented at trial cannot be presented in Fed. R. Civ. P. 59(e) motion). Finally, Chrysler contends that the court's retaliation instruction was erroneous because it stated that damages were an element of a retaliation claim. This instruction is more favorable to Chrysler than the instruction Chrysler submitted. There was no prejudice to Chrysler's substantial

-18-

rights from giving the one instruction rather than the other.  See Phillips v. Collings, 256 F.3d 843, 851 (8th Cir. 2001) (instructional error reversible only if prejudicial to substantial rights).

V.

Chrysler appeals from the award of attorney's fees and costs to Salitros, contending that the district court should not have held Salitros to be the prevailing party, that his attorney's fees should have been reduced to account for partial success, and that both fees and costs should have been reduced because of inadequate record-keeping.  The Americans with Disabilities Act permits the court to award fees and costs to the prevailing party.  42 U.S.C. § 12205 (1994).  The fees and costs motion was referred to a magistrate judge, who considered all the arguments that Chrysler makes before us and who gave reasoned and persuasive explanations for the amount of fees he arrived at.  The district court reviewed the magistrate judge's recommendation de novo and adopted it.  We review fee awards for abuse of discretion, and we review de novo the determination of whether a litigant is a prevailing party.  Jenkins v. Missouri, 127 F.3d 709, 713-14 (8th Cir. 1997).

Chrysler contends that Salitros was not the prevailing party, but this clearly is not the case, since Salitros received relief on the merits of his retaliation claim.  See Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Res., 532 U.S. 598, 603-04 (2001).  Chrysler also argues that the award should be reduced to account for the disability discrimination and other claims on which Salitros did not prevail.  The magistrate judge considered this argument and concluded that the claims shared a common core of facts and therefore the fees should not be reduced for failure to prevail on every theory.  Accepting this recommendation was not an abuse of the district court's discretion.  See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000).  Finally, Chrysler contends that Salitros's attorney did not keep proper records of her time, but the magistrate judge's recommendation took this

deficiency into account in setting the hourly rate. No abuse of discretion appears in the award of fees and costs.

We affirm the judgment of the district court and the award of fees and costs imposed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.