# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2627

_____

M. Randy Rice, as Trustee for Jody L. Clark

*Plaintiff*

v.

Union Pacific Railroad Company

*Defendant Third Party Plaintiff - Appellant*

v.

Gunderson Rail Services LLC, doing business as Greenbrier Rail Services Pine Bluff, doing business as Gunderson Wheel Services, doing business as Gunderson, Inc.

*Third Party Defendant - Appellee*

_____

No. 12-2718

_____

M. Randy Rice, as Trustee for Jody L. Clark

*Plaintiff*

v.

Union Pacific Railroad Company

*Defendant Third Party Plaintiff - Appellee*

v.

Gunderson Rail Services LLC, doing business as Greenbrier Rail Services Pine Bluff, doing business as Gunderson Wheel Services, doing business as Gunderson, Inc.

*Third Party Defendant - Appellant*

_____

No. 12-2758

_____

M. Randy Rice, as Trustee for Jody L. Clark

*Plaintiff*

v.

Union Pacific Railroad Company

*Defendant Third Party Plaintiff - Appellant*

v.

Gunderson Rail Services LLC, doing business as Greenbrier Rail Services Pine Bluff, doing business as Gunderson Wheel Services, doing business as Gunderson, Inc.

*Third Party Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 14, 2013
Filed: April 12, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jody Clark filed a lawsuit against his employer, Union Pacific Railroad Company ("Union Pacific"), for injuries he sustained at a railyard operated by Gunderson Rail Services ("Gunderson"). Union Pacific filed a third-party complaint for indemnity against Gunderson, and Union Pacific and Gunderson settled with Clark, each agreeing to pay half of Clark's $1.15 million settlement demand. After settling with Clark, Union Pacific and Gunderson proceeded to trial to determine whether Gunderson also should be liable for Union Pacific's half of the settlement. After a bench trial, the district court[1] determined that each party was liable for half of the settlement. The district court subsequently awarded Union Pacific half of its attorney's fees and costs incurred as of the settlement but denied Union Pacific's motion for additional attorney's fees arising out of the post-settlement indemnification proceedings. Union Pacific appeals, seeking full indemnity, or, alternatively, its additional attorney's fees and costs. Gunderson cross-appeals, challenging Union Pacific's attorney's fees and costs award. For the reasons discussed below, we affirm.

I.

Gunderson operates a railyard in Pine Bluff, Arkansas, leasing the track within that yard from Union Pacific pursuant to the parties' Track Lease Agreement ("TLA"). The TLA refers to Gunderson as "the Industry" and Union Pacific as "the Railroad." The TLA sets forth the parties' responsibilities for liability at the yard:

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

-3-

Section 3.   <u>LIABILITY</u>.

\* \* \*

(b) Except as otherwise specifically provided in this Agreement, all Loss related to the construction, operation, maintenance, use, presence or removal of the Track shall be allocated as follows:

(1) The Railroad shall pay the Loss when the Loss arises from or grows out of the acts or omissions of the Railroad whether or not a Third Person contributes to cause the Loss.

(2) The Industry shall pay the Loss when the Loss arises from or grows out of the acts or omissions of the Industry. The Industry shall also pay Loss when the Loss arises from or grows out of:

\* \* \*

(iii) the Industry's failure to comply with Standards, as required by Section 2(f);

(iv) intraplant switching as defined by section 2(e);

\* \* \*

The Industry shall be liable under [iii and iv] regardless of whether the Railroad had notice of, consented to, or permitted the aforesaid impairments, failures, Standards . . . and whether or not the Railroad or a Third person contributed to cause the Loss.

(3) Except as otherwise more specifically provided in this Agreement, Railroad and Industry shall pay equal parts of the Loss that arises out of the joint or concurring negligence of the Railroad and the Industry, whether or not the acts or omissions of a Third Person contribute to cause the Loss . . . .

The TLA defines "Standards" in section 2(f) as "all applicable ordinances, regulations, statutes, rules, decisions and orders including, but not limited to safety, zoning, air and water quality, noise, hazardous substances and hazardous wastes [that are] issued by any federal, state or local governmental body or agency." Section 2(e)

defines "intraplant switching" as "the movement of rail cars on the track by the Industry by any method and includes the Industry's capacity to move rail cars whether before, during or after any such movement."

Clark was employed by Union Pacific as a switchman in its Pine Bluff, Arkansas division. He worked in a three-man crew that hauled train wheels and axles to and from the Gunderson yard. On Monday, August 30, 2010, Clark and his crew went to the Gunderson yard to move three of Union Pacific's cars, which they had left at the railyard the previous Friday. Tommy Morrison, one of Clark's crew-mates, backed Union Pacific's engine to the first car, coupled the engine to the car, and pulled forward. As Morrison pulled forward, Clark noticed that the last car, AOK6445, was not coupled to the other cars. Clark then walked towards the second and third cars, observing that both cars had "slued" drawbars, which indicated that the cars had been uncoupled. When Clark approached AOK6445, standing water and mud surrounded the track such that no railroad ties were visible. As Clark attempted to recouple the cars by realigning the slued drawbars, he slipped in the mud between the rails of the track, seriously injuring his back.

M. Randy Rice, Clark's bankruptcy trustee, filed suit on Clark's behalf against Union Pacific under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*., the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq*., and the Federal Safety Appliance Act, 49 U.S.C. § 20301 *et seq*. Union Pacific then filed a third-party complaint for indemnity against Gunderson, alleging that Gunderson was fully liable to Union Pacific for Clark's injuries under the indemnity provisions of the TLA. On the eve of trial, Clark reached a settlement with Union Pacific and Gunderson, and the parties exchanged communications to confirm the settlement. A dispute arose, however, between Union Pacific and Gunderson as to the terms of the settlement. Union Pacific believed that Gunderson had agreed to pay half of the settlement directly to Clark and proceed to trial to determine whether Gunderson should indemnify Union Pacific for Union Pacific's half of the settlement. Gunderson

believed that it had the option to either pay half of Clark's settlement or pay nothing to Clark and proceed to trial on the indemnity issue. Clark filed a motion to enforce settlement, and the district court held a telephone conference to resolve the dispute. The district court reviewed the parties' correspondence and found that Union Pacific and Gunderson had settled with Clark for $1.15 million, each agreeing to pay $575,000 directly to Clark. The district court further found that the parties had agreed to proceed to trial to determine whether Gunderson should also be liable for Union Pacific's half of the settlement.

During the indemnity trial, Union Pacific sought to prove that Gunderson was wholly liable for Clark's injuries under the TLA because Gunderson's intraplant switching caused Clark's injuries and because Gunderson failed to comply with applicable workplace safety standards.[2] The district court determined that neither the intraplant switching nor the workplace standards provision applied in this case, and it therefore found that Gunderson had a duty to indemnify Union Pacific for only half of Clark's damages. Because the court had previously ordered Gunderson to directly pay Clark for half of the settlement, it found that Union Pacific was not entitled to any further indemnification.

After the trial concluded, Union Pacific filed a motion for attorney's fees and costs pursuant to the "loss" provision of the TLA:

> "Loss" means loss of or damage to the property of any Third Person or Party and/or injury to or death of any Third Person or Party. "Loss" shall also include, without limitation, the following associated expenses incurred by a Party: costs, expenses, the cost of defending litigation, attorneys' fees, expert witness fees, court costs, the amounts paid in

---

[2]At trial, Union Pacific also alleged it was entitled to full indemnity because Gunderson failed to "construct or maintain pathways or walkways" as required by the TLA. On this claim, the district court ruled in favor of Gunderson, and Union Pacific does not appeal.

settlement, the amount of the judgment, and any pre-judgment and post-judgment interest and expenses . . . .

The district court found that Union Pacific's pre-settlement attorney's fees and costs, including those related to enforcement of the indemnity provision, constituted a "loss." However, because the court had found that Gunderson was obligated to indemnify Union Pacific for only half of Clark's settlement, it awarded Union Pacific only half of its attorney's fees and costs.

Union Pacific also filed a motion for attorney's fees under Arkansas Code Annotated section 16-22-308, which allows the court to award attorney's fees to the prevailing party in breach of contract actions, for the post-settlement indemnification proceedings. The court held that section 16-22-308 did not apply in the first instance because Union Pacific did not claim a breach of contract. Rather, it had asked the court to interpret the parties' responsibilities under the indemnity provision. The court also determined that section 16-22-308 did not apply because Union Pacific was not a "prevailing party," as it failed to prevail on its claim that it was entitled to indemnification for the entire settlement amount.

Union Pacific appeals, arguing that the TLA requires Gunderson to indemnify Union Pacific for the entire settlement with Clark as well as all of Union Pacific's attorney's fees and costs. Alternatively, Union Pacific claims that the district court should have awarded Union Pacific all of its attorney's fees for the post-settlement indemnification proceedings under section 16-22-308. Gunderson cross-appeals Union Pacific's attorney's fees and costs award, arguing that the settlement with Clark included Union Pacific's attorney's fees and costs. Alternatively, Gunderson claims Union Pacific is at most entitled to half of its attorney's fees and costs arising from Clark's claim but none of the attorney's fees and costs arising from enforcement of the indemnity provision.

II.

"After a bench trial, this court reviews legal conclusions de novo and factual findings for clear error." *Urban Hotel Dev. Co. v. President Dev. Grp., L.C.*, 535 F.3d 874, 879 (8th Cir. 2008). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." *Id.* (quoting *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 353 (8th Cir. 2008)).

"[A]n 'industry's obligation to indemnify a railroad under an industrial track agreement is a contractual duty and not a duty arising under the common law of tort.'" *Burlington N., Inc. v. Bellaire Corp.*, 921 F.2d 760, 763 (8th Cir. 1990) (quoting *Burlington N., Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 284 (8th Cir. 1982)). "Contract interpretation, including construction of indemnity clauses . . . is a matter of law which we review de novo." *In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 858 (8th Cir. 2010). The parties agree that Arkansas law governs the interpretation of the TLA.

A.

Union Pacific first argues that Gunderson must fully indemnify Union Pacific because Clark's injuries arose from Gunderson's "intraplant switching." *See* TLA Ex. B § 3(b)(2)(iv) ("The Industry shall also pay the [full] Loss when the Loss arises from or grows out of: intraplant switching . . . ."); *Id.* § 2(e) (defining "intraplant switching" as "the movement of rail cars on the Track by the Industry by any method"). At trial, Union Pacific presented circumstantial evidence that Gunderson moved the railcars, including AOK6445. Each member of Clark's crew testified that the cars were coupled when they left the Gunderson railyard on Friday, August 27. Union Pacific presented evidence that it and Gunderson were the only entities that worked in

-8-

Gunderson's railyard, that the drawbar on AOK6445 was "fully slued" when the crew arrived on Monday, and that the drawbar of a railcar can become "slued" only when someone uncouples and moves the car. Union Pacific witnesses also testified that Gunderson forklift drivers had a practice of moving and uncoupling Union Pacific's cars during loading and unloading.

Gunderson also offered evidence to support its position that it had not engaged in intraplant switching. Several of Gunderson's witnesses testified that Gunderson would have had no reason to move car AOK6445 between August 27 and August 30, 2010, based on its location in the yard. In addition, Union Pacific was unable to provide written records to corroborate its assertion that the cars were coupled on Friday afternoon, despite the fact that it is standard practice for a railroad to maintain such records.

After weighing Union Pacific's evidence against Gunderson's, the district court determined that Union Pacific did not prove by a preponderance of the evidence that Gunderson moved the cars between Friday, August 27 and Monday, August 30, 2010. Because there is substantial evidence in the record to support the district court's conclusion, it cannot be clearly erroneous. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (stating that when there are "two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"); *see also Baggett v. Program Res., Inc.*, 806 F.2d 178, 181 (8th Cir. 1986) ("The test [under the clearly erroneous standard of review] is not whether review of the evidence would lead us to the same conclusion as that reached by the district court, but whether the district court has demonstrated any clear error in its conclusion.").

B.

Union Pacific also claims it is entitled to full indemnification because Gunderson failed to comply with the "standards" provision of the TLA. It argues that the conditions of the track violated workplace standards set by the Occupational Safety and Health Administration ("OSHA") and the Arkansas Department of Labor ("DOL"). *See* TLA Ex. B § 2(f) (defining "standards" as "all applicable ordinances, regulations, statutes, rules, decisions and orders including, but not limited to, safety, zoning, air and water quality, noise, hazardous substances and hazardous wastes [which are] issued by any federal, state or local governmental body or agency"). Specifically, Union Pacific claims that Gunderson violated the OSHA general duty clause, *see* 29 U.S.C. § 654(a) ("Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards . . . ."), and the DOL Basic Safety Manual, which requires "smooth non-slippery floors and other surfaces on which men walk or step."

At trial, the district court determined that Union Pacific failed to establish either violation by a preponderance of the evidence, noting that no regulatory agency had ever cited Gunderson for violating any workplace safety standards. Although two Gunderson employees and a Union Pacific employee testified generally that the mud in the railyard created an unsafe work condition, Union Pacific presented little, if any, evidence that Gunderson violated any specific OSHA or DOL rules. Moreover, the evidence Union Pacific did present came from its track maintenance witness, Jimmy Smith, who admitted on cross-examination that he was not an expert on either OSHA or DOL standards and that he had never read either set of rules until preparing to testify for Union Pacific in this case. The district court did not clearly err because substantial evidence in the record supports its conclusion that Union Pacific failed to prove an OSHA or DOL violation by a preponderance of the evidence. *See Anderson*, 470 U.S. at 573 ("Findings of fact shall not be set aside unless clearly erroneous, and

-10-

due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (quoting Fed. R. Civ. P. 52(a))).

## III.

Union Pacific next claims that the district court erred when it found that Union Pacific was not a prevailing party for purposes of section 16-22-308. "We review fee awards for abuse of discretion, and we review de novo the determination of whether a litigant is a prevailing party" under section 16-22-308. *Baptist Health v. Smith*, 536 F.3d 869, 873 (8th Cir. 2008) (quoting *Salitros v. Chrysler Corp.*, 306 F.3d 562, 576 (8th Cir. 2002)). "Under Arkansas law, the prevailing party is determined by analyzing each cause of action and its subsequent outcome." *Id.* (quoting *CJ Bldg. Corp. v. TRAC-10*, 249 S.W.3d 793, 796 (Ark. 2007)). "In essence, we must look at the case as a whole to determine whether there was a prevailing party and who that party is." *Id.* (quoting *CJ Bldg. Corp.*, 249 S.W.3d at 796).

In this case, Union Pacific sought  attorney's fees under section 16-22-308 solely for the post-settlement indemnification proceedings, which took place after the district court found that Union Pacific and Gunderson had reached a settlement with Clark.  By the time the trial started, Union Pacific and Gunderson already had agreed to pay equal shares of Clark's settlement demand.  The only issue remaining for trial was whether Gunderson also should be liable for Union Pacific's share of the settlement amount.  At trial, the district court determined that Gunderson was not liable for any additional amount and, accordingly, the district court did not err when it found that Union Pacific was not a prevailing party under section 16-22-308.

## IV.

In its cross-appeal, Gunderson claims that the May 29, 2012 settlement included attorney's fees and costs and that the district court therefore erred when it partially

-11-

granted Union Pacific's post-trial motion for attorney's fees and costs. Contrary to Gunderson's claim, however, the district court did not find that Union Pacific and Gunderson had settled with one another. Rather, the court indicated that Union Pacific and Gunderson each settled with Clark, stating: "Union Pacific and Gunderson settled the FELA case with plaintiff for $1,150,000.00 and thereby entered into a binding settlement agreement." Indeed, after the court enforced the May 29, 2012 settlement, Gunderson and Union Pacific proceeded to trial on the indemnity question, indicating that the parties had not in fact settled with one another.[3]

Alternatively, Gunderson contends that the TLA at most entitles Union Pacific to half of its attorney's fees and costs arising from Clark's claim but none of its indemnity-related fees and costs. *See Warner Holdings, Ltd. v. Abrego*, 688 S.W.2d 724, 726 (Ark. 1985) (reciting the general rule in Arkansas that "when a party agrees to indemnify another against losses, attorney's fees incurred in enforcement of the indemnity agreement are not recoverable" but finding that attorney's fees were recoverable under the  parties' contract). As in *Warner Holdings*, the general rule does not apply because the fees are recoverable under the parties' contract. The TLA provides that "'Loss' shall also include, *without limitation*, the following associated expenses incurred by [either party]: . . . the cost of defending litigation, attorneys' fees, expert witness fees, court costs, the amounts paid in settlement . . . ." (emphasis added). Thus, as the TLA indicates that it includes both "attorneys' fees" and "the cost of defending litigation" "without limitation," we must interpret broadly the meaning of these terms. "Attorneys' fees" and the "cost of defending litigation" are listed separately, suggesting that "loss" includes various types of attorney's fees, such as those related to enforcement of the indemnification agreement, that are unrelated

---

[3]It does seem unusual, as Gunderson notes, that the district court enforced a settlement between Gunderson and Clark despite the fact that Clark had no claim against Gunderson. Gunderson potentially was liable only to Union Pacific because of the indemnity provisions of the TLA. However, Gunderson does not appeal the settlement.

to the "cost of defending litigation."  Moreover, were it not for Clark's claim, Union Pacific would not have incurred indemnity-related costs.  *Cf. Intents, Inc. v. Sw. Elec. Power Co.*, 376 S.W.3d 435, 443 (Ark. 2011) (holding that an Arkansas statute providing for "*all* loss, cost, and damages, including attorney's fees" included indemnification-related attorney's fees).   Accordingly, the district court did not err by finding that the TLA entitled Union Pacific to half of its attorney's fees and costs.

## V.

For the foregoing reasons, we affirm.

_____