# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3847

_____

Federated Mutual Insurance Company

*Plaintiff - Appellee*

v.

Moody Station and Grocery

*Defendant - Appellant*

The Big Store

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: December 15, 2015
Filed: May 2, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A fire damaged Moody Station and Grocery, a convenience store owned by Sonya R. Hubbard. The store was leased to Jeremy D. and Don McKee Jr., operating

as "The Big Store."  The insurer, Federated Mutual Insurance Company, filed an interpleader suit to determine the rights of Moody Station and The Big Store to insurance proceeds.  Moody Station says it is entitled to the full amount remaining under the policy, not just part of the interpleaded funds.  The district court found Moody Station was not entitled to the full amount and awarded attorney fees to Federated.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and reverses in part.

I.

Federated insured Moody Station for $225,000.00 for fire loss and other casualties.  Months after the policy issued, the main building on the property was damaged by fire.  A carport, sign, and shed (operated as "Don's ATV and Boat Repair") were not damaged.

Federated instituted an interpleader suit to determine the proper allocation of policy proceeds between Moody Station and The Big Store.  Having paid Moody Station's mortgagee $131,898.44, Federated alleged its willingness to pay the remaining $92,101.56 (after the $1,000 deductible).  Federated asserted that only $40,980.95 was owing, which it deposited with the district court.  Moody Station counter-claimed for vexatious refusal to pay—a claim dismissed by the district court and affirmed on appeal.  *See **Hubbard v. Federated Mut. Ins. Co.***, 799 F.3d 1224, 1226 (8th Cir. 2015).  The district court eventually ordered a distribution of the interpleaded funds, determining The Big Store was entitled to $10,879.39 and Moody Station was entitled to $30,101.56.

Federated contested paying the remaining $51,120.61, arguing Moody Station had not replaced the property as required by the policy.  Moody Station argued that it suffered a total loss and, by Missouri's total-loss statute, should recover the $51,120.61.  Alternatively, Moody Station argued that, even with a partial loss, its

damage exceeded the policy limit. Federated countered that—regardless of total or partial loss—Moody Station's policy had an (un-met) condition precedent: "We will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Federated then concluded that recovery was limited to the actual cash value of the property by another policy provision: "We will determine the value of Covered Property in the event of loss or damage . . . At actual cash value as of the time of loss or damage . . . ."

The district court found that because Moody Station had not repaired or replaced the damaged property, the replacement-cost provision is a valid condition precedent limiting Moody Station to the actual cash value of the property. The district court held a bench trial on actual cash value of the property. The court did not make an explicit finding whether the property suffered a total or partial loss. It did use the analysis in Missouri's partial-loss statute to determine recovery. Federated argued the actual cash value was $162,000; Moody Station argued it exceeded the policy limit of $225,000. Hubbard (the owner of Moody Station) testified that at the time of loss, the property was worth $320,000. The district court disagreed, first finding the actual cash value was $137,750.68. However, it set the actual cash value at $162,000—Federated's position throughout. The court ruled Moody Station did not meet its burden to show the actual cash value exceeded $225,000 and was thus not entitled to the additional $51,120.61. The court awarded Federated attorney fees, ordering The Big Store to pay $233.29 and Moody Station to pay $3,859.46. Moody Station appeals.

II.

This court must first determine if it has subject matter jurisdiction. Moody Station is correct that there is no jurisdiction under Section 1335's statutory

interpleader because the two adverse claimants—Moody Station and The Big Store—are both citizens of Missouri. *See* **28 U.S.C. § 1335**. "The interpleader statute . . . applies where there are 'Two or more adverse claimants, of diverse citizenship.'" *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967), *quoting* **§ 1335**.

Federated's complaint invoked Rule 22 of the Federal Rules of Civil Procedure, asserting diversity jurisdiction under 28 U.S.C. § 1332. Rule 22 states that persons "with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead . . . even though . . . (B) the plaintiff denies liability in whole or in part to any or all of the claimants." **Fed. R. Civ. P. 22(a)(1)**. Rule interpleader "does not provide an independent basis for jurisdiction" but can "be premised on the diversity statute." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 124 (2d Cir. 2003). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . (1) citizens of different States." **28 U.S.C. § 1332(a)**. Rule interpleader "requires that the plaintiff . . . be of diverse citizenship to all defendants, and that the amount in controversy be greater than $75,000." *Correspondent Servs.*, 338 F.3d at 124. *See also* *Webb v. Voirol*, 773 F.2d 208, 209 (8th Cir. 1985) (stating the appeal is "an interpleader action brought pursuant to Fed.R.Civ.P. 22, with jurisdiction based on 28 U.S.C. § 1332").

Diversity jurisdiction exists here. Diversity of citizenship is undisputed: the claimants are both citizens of Missouri and the stakeholder, Federated, is a citizen of Minnesota. The amount in controversy is also met. "In this circuit, the amount in controversy is measured by the value to the plaintiff of the right sought to be enforced." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821 (8th Cir. 2011). A complaint that "alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Scottsdale Ins. Co.*

*v. Universal Crop Prot. Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010), *quoting St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). In the initial complaint, Federated alleged an amount in controversy of $92,101.56. Although Federated is disinterested as to $40,980.95, the total $92,101.56 is in dispute among the three parties. In fact, Moody Station counterclaimed, in good faith, that it was entitled to the full amount. *Cf.* **Schubert**, 649 F.3d at 821-822 (finding no amount in controversy where insurer, pre-litigation, sent a check to insured for $62,250 and the remaining $62,250 under the policy was the only amount in dispute). Diversity jurisdiction is proper here.

III.

According to Moody Station, the district court erred in determining the only issue for trial was actual cash value and in requiring Moody Station to bear the burden of proving it. After a bench trial, this court reviews legal conclusions de novo and factual findings for clear error. **Rice v. Union Pacific R. Co.**, 712 F.3d 1214, 1219 (8th Cir. 2013). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." **Id.** *See also* **Fed. R. Civ. P. 52(a)(6)** ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). Both parties agree that Missouri law applies.

The policy says that, in the event of loss or damage, the value of covered property is determined by "actual cash value as of the time of loss or damage." On the other hand, if an insured prefers to receive replacement costs, the insured must repair or replace "as soon as reasonably possible after the loss or damage."

A policy requiring actual replacement or repairs in order to receive replacement costs complies with Missouri's partial-loss statute. *Dollard v. Depositors Ins. Co.*, 96 S.W.3d 885, 889 (Mo. App. 2002), *discussing* **Mo. Rev. Stat. § 379.150** (the "partial-loss statute"). After a partial loss, "it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy . . . at the option of the insured." **§ 379.150**. The policy purposes of Section 379.150 "do not override the admittedly unambiguous language of [the insurer's] policy that meets the statutory minimum and provides an additional benefit, subject to conditions that the property actually be repaired or replaced." *Dollard*, 96 S.W.2d at 890.

After a total loss, a policy may require a similar condition precedent. *Kastendieck v. Millers Mut. Ins. Co. of Alton, Ill.*, 946 S.W.2d 35, 36 (Mo. App. 1997), *discussing* **Mo. Rev. Stat. § 379.140** (in this opinion, the "total-loss statute"). The policy in *Kastendieck* provided that the insurer "will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete." *Id.* at 40. The court held that the insured's "claim that he is entitled to recover the replacement cost of his dwelling and personal property without actually replacing these items must fail . . . . This provision is clear and unambiguous and must be enforced as written." *Id.* The policy here allowed for replacement costs at Moody Station's option, but Moody Station must first replace or repair the property.

The district court properly relied on *Kastendieck* to enforce the replacement-cost provision, but it wrongly concluded, based on *Kastendieck*, that it did not need to explicitly find if Moody Station suffered a partial loss or total loss. *See Id.* at 37 (explaining that the insurer paid "the policy limit *as required* by § 379.140") (emphasis added). The district court here adopted the partial-loss analysis, placing the burden on Moody Station to prove actual cash value at the time of loss. *See* **§ 379.150**; *Fire Ins. Exchange v. Bowers*, 994 S.W.2d 110, 112 (Mo. App. 1999) ("In

-6-

cases of partial loss, the insured has the burden to prove the value of the property both before and after the casualty."); ***Porter v. Shelter Mut. Ins. Co.***, 242 S.W.3d 385, 390 (Mo. App. 2007) ("Actual cash value means a depreciated sum, i.e., the difference between the reasonable value of the property immediately before and immediately after the loss."), *discussing* **§ 379.150**.

Total loss has a different standard:

> . . . in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant.

**§ 379.140**. *See **Wells v. Missouri Prop. Ins. Placement Facility***, 653 S.W.2d 207, 210 (Mo. banc 1983) ("Section 379.140 . . . establishes as the measure of damages for a total loss of real property the face value of the policy less the amount the property depreciates between the time the policy is issued and the time of the casualty. The insurer bears the burden of proving such depreciation . . . .").

Although the district court did not explicitly find a partial loss, the court implicitly rejected that a total loss occurred (as confirmed by the court's allocation of the burden of proof on the insured). Only two witnesses testified at trial: Hubbard, the owner, and Kent E. Garretson, a claims adjuster for Federated for 19 years. The district court found Hubbard's testimony that the property was worth $320,000 "purely speculative," while explicitly finding Garretson's "testimony regarding the value of the property . . . credible." Garretson testified that "Don's ATV and Boat Repair" shop and the free-standing sign were undamaged by the fire; Hubbard herself testified that these structures remained after the fire, in addition to a metal-frame carport. *See* **§ 379.150** (stating that the partial-loss statute applies "[w]henever there

is a partial destruction or damage to property covered by insurance"); *Stevens v. Norwich Union Fire Ins. Co.*, 96 S.W. 684, 689 (Mo. App. 1906) (holding "there was not a total loss" where $100 of insured goods were saved and $800 of goods were "destroyed by fire"); *cf. State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 516 (8th Cir. 2009) (noting that under an analogous Kansas law, a property is not "wholly destroyed" "where one building in a group of buildings is destroyed"). These undamaged structures were covered by the policy. Garretson also testified, based on industry-standard software, that the actual cash value of the damaged property was $137,750. The court ultimately found the actual cash value to be $162,000 ($163,000 less the $1,000 deductible). This finding is not clearly erroneous and is supported by substantial evidence in the record.

Because the district court solely credited Garretson's testimony, the court did not clearly err in determining the actual cash value of the destroyed property.

IV.

Moody Station challenges the award of ten percent of the interpleaded funds as attorney fees to Federated. The decision to award attorney fees "rests within the sound discretion of the [district] court and we will not disturb [the district court's decision] absent a clear abuse of that discretion." *Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1094 (8th Cir. 2012) (brackets in original).

While a "completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, the amount allowed for such fees should be modest." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940). An interpleader action, "including the depositing of the fund in the registry of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor, or responsibility." *Id.* Although Federated did deposit interpleaded funds with the

district court, Federated was not disinterested, alleging that the entire $92,101.56 was in controversy. Federated has consistently opposed Moody Station's attempts to collect on its policy and is not a disinterested stakeholder deserving attorney fees. *See **Rhoades v. Casey***, 196 F.3d 592, 603 (5th Cir. 1999) ("The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants."). The district court clearly abused its discretion in ordering Moody Station to pay attorney fees to Federated.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed in part, reversed as to attorney fees, and remanded for proceedings consistent with this opinion.

_____